■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALVIN M. HOGENCAMP, Appellant. [744 NYS2d 242] —Cardona, P.J. Appeal from a judgment of the County Court of Delaware County (Estes, J.), rendered August 14, 2000, convicting defendant upon his plea of guilty of four counts of the crime of burglary in the third degree.

Defendant was indicted on four counts of burglary in the third degree, four counts of criminal mischief in the third degree, three counts of petit larceny and one count of criminal possession of stolen property in the fifth degree stemming from his alleged participation in the burglaries of four cabins in the Town of Colchester, Delaware County. Following a hearing resulting in County Court's refusal to suppress physical evidence and certain oral statements, defendant pleaded guilty to four counts of burglary in the third degree, specifically reserving his right to appeal County Court's suppression rulings. He argues, inter alia, that under our state common law his oral statements made to the police and the physical evidence seized from his jacket were obtained as the result of an illegal stop and detention (*see, People v Hollman*, 79 NY2d 181; *People v De Bour*, 40 NY2d 210).

The facts as determined from the suppression hearing establish that on January 1, 2000 at 9:30 A.M., Sergeant Paul Buttacavoli of the Department of Environmental Protection (hereinafter DEP) was in his parked patrol vehicle on a dirt pull-off parallel to State Route 30 in Colchester. The vehicle was at a point just north of the gated and locked driveway leading to the east Delaware intake chamber of the Pepacton Reservoir. Buttacavoli was guarding the intake chamber to prevent possible vandalism to the New York City water supply due to Y2K. Through his driver's side view mirror, the officer observed defendant walking in his direction along the shoulder on the same side of Route 30. He could see that defendant's face was

frosted from the cold and his hands were inside his bulging front jacket pockets. As defendant drew near, Buttacavoli exited his vehicle and walked toward him. He immediately asked defendant to remove his hands from his pockets and defendant complied.

Buttacavoli asked defendant for his name, which defendant gave, and for identification. Defendant produced his driver's license bearing his picture, which Buttacavoli examined and determined that defendant was a local resident. He asked defendant where he was coming from, and defendant indicated from his grandmother's house on Holiday Brook Road. Buttacavoli then asked defendant where he was going, and defendant replied that he was on his way to the community of Downsville, Delaware County, to use a pay phone. He asked defendant what was making his pockets bulge, and defendant told him that he had change in his jacket. Defendant took his jacket off and handed it to Buttacavoli, who looked in the pockets. Defendant indicated that he was a parolee. At this point, although Buttacavoli expressed that he had no doubt that defendant was on his way to Downsville, he, nevertheless, had defendant stand next to his patrol car while he radioed for a license check. During that five minute period, defendant repeatedly asked Buttacavoli if he was going back to jail and Buttacavoli told defendant no because he did not do anything wrong. Defendant's license was in order, however, due to defendant's nervousness and repeated questions about returning to jail, Buttacavoli's suspicions were aroused, so he asked defendant "is there something you have to tell me?" At that point, defendant told Buttacavoli that his friends had broken into some cabins, but he had no part in it. Defendant, still not wearing his jacket, asked if he could sit in the vehicle because he was cold and shivering. Buttacavoli allowed that and then called his supervisor, DEP Sergeant Joseph Kennedy, who in turn called the Chief of Police of the Town of Colchester, Christopher D'Addezio.

When D'Addezio arrived, Buttacavoli handed him defendant's jacket. D'Addezio looked inside and questioned defendant. In response, defendant informed D'Addezio that his friends were burglarizing camps on Holiday Brook Road. They had a red car with out-of-state plates parked at his grandmother's house. D'Addezio told Buttacavoli to hold defendant while he investigated. He went to the grandmother's house and saw the car. D'Addezio contacted the State Police for assistance. Upon arrival, they encountered several people coming out of the woods who were then transported to the State Police barracks.

Meanwhile, Kennedy met Buttacavoli and transported defendant to the DEP station. After the other individuals implicated defendant in the burglaries, D'Addezio radioed Kennedy and told him to give defendant his *Miranda* warnings. Kennedy did so and defendant was subsequently transported to the State Police barracks. There, after again receiving *Miranda* warnings, defendant was questioned by State Police Investigator John Way, and he made incriminating oral statements.

Turning to the merits, a police officer, acting in his or her law enforcement capacity, may legitimately approach an individual and request information provided the request is supported " 'by an objective, credible reason, not necessarily indicative of criminality * * *' " (*People v McIntosh*, 96 NY2d 521, 525, quoting *People v Hollman*, 79 NY2d 181, 184, *supra; see, People v De Bour*, 40 NY2d 210, 223, *supra*). Here, even assuming that the initial stop to request information was based upon an objective and credible reason, and the search of defendant's jacket consensual, the ensuing involuntary detention was not (*see, e.g., People v Banks*, 85 NY2d 558, *cert denied* 516 US 868). Once Buttacavoli examined defendant's driver's license, was satisfied that he was the person identified by it and determined that he was a local resident who had a lawful reason for being in the area, his initial justification for requesting information from him was exhausted (*see, id.* at 562). At that point, Buttacavoli admitted that his concern for the intake chamber had been alleviated. The apparent nervousness in defendant's voice, which Buttacavoli conceded could have been attributed, in part, to the fact that he was cold and shivering, did not, by itself, provide a basis for a reasonable suspicion of criminality (*see, id.* at 562). Absent a founded suspicion that criminality was afoot, defendant should have been permitted to proceed on his way without continued interference. Instead, he was further detained while the officer completed a check of his driver's license. Buttacavoli testified that he ran the license check simply because "it is just something I do." We find such conduct to be unreasonable under the circumstances here, particularly since defendant was not operating a motor vehicle.

In sum, the officer's conduct violated this State's rules regulating police-civilian encounters under *De Bour* and its progeny. Accordingly, we are constrained to reverse defendant's conviction, suppress his oral statements and the physical evidence seized and dismiss the indictment. We need not address his alternative arguments for reversal.

Mercure, Crew III, Spain and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, motion to suppress granted, and indictment dismissed.