[978 NYS2d 165]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAVONE MAJOR, Appellant.

First Department, January 14, 2014

**APPEARANCES OF COUNSEL**

*Richard M. Greenberg, Office of the Appellate Defender,* New York City (*Joseph M. Nursey* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Caleb Kruckenberg* and *Eleanor J. Ostrow* of counsel), for respondent.

**OPINION OF THE COURT**

RICHTER, J.

On the morning of November 6, 2008, Detective Raymond Mongelli was driving in a marked police car in the vicinity of Lenox Avenue in upper Manhattan. Mongelli, who was in uniform, noticed a black Lexus with heavily tinted windows, a violation of the Vehicle and Traffic Law. The Lexus turned west from Lenox Avenue onto 115th Street, and Mongelli activated the patrol car's lights and siren and signaled the Lexus to pull over. The Lexus stopped partway down the block on the north side of the street, and Mongelli stopped his vehicle about 20 feet behind.

Detective Mongelli approached the Lexus and asked the driver, who was alone in the car, for his license and registration. The driver, who appeared nervous, told Mongelli that he did not have a license, but provided the detective with his name and date of birth. Mongelli returned to his patrol car, checked the driver's information on his computer console, and learned that the driver had a revoked license. As he was checking the computer, Detective Mongelli looked up and saw defendant standing at the open window of the Lexus. The detective observed defendant take a small black plastic bag from the driver of the Lexus and walk away from the car toward the opposite sidewalk on the south side of the street. Mongelli did not hear any communication between the driver and defendant, and he could not see what was inside the bag.

Mongelli called for backup, got out of his police car, and told defendant to stop. Defendant did not respond and continued to walk away from the Lexus. After reaching the south sidewalk, defendant walked eastbound toward the direction of Detective Mongelli and the patrol car. Mongelli walked diagonally toward defendant, ordered him to stop several more times, and then told defendant to "turn the bag over."

Meanwhile, two uniformed backup officers arrived on the scene in a marked patrol car with lights flashing and siren sounding. The backup officers got out of their vehicle and approached defendant from the east. Defendant, who could see the two backup officers coming toward him, stopped and threw the plastic bag onto the trunk of a nearby parked car. The bag opened as it landed, and inside, Detective Mongelli was able to see a clear ziplock bag that, based on his training, appeared to be marijuana. Defendant was then placed under arrest.

Defense counsel did not timely move to suppress the physical evidence, the case proceeded to trial and defendant was convicted of criminal possession of marijuana in the third degree. In a previous appeal, we concluded that defendant was deprived of effective assistance of counsel due to counsel's failure to file a suppression motion, or to provide good cause for such failure (96 AD3d 677 [2012]). We found that the actions of the police in stopping defendant and seizing the plastic bag were of questionable propriety, and raised a colorable basis for suppression. The appeal was held in abeyance and the matter was remitted for a suppression hearing. Defense counsel filed a motion to suppress, a hearing was held and the court denied the motion. We now reverse.

The Court of Appeals has identified a gradual four-level test for evaluating police-citizen street encounters (*People v De Bour*, 40 NY2d 210, 223 [1976]). The first level permits an officer to approach and request information based on an objective credible reason not necessarily indicating criminality (*id.*). Level two permits a greater intrusion and allows for a "common-law right to inquire," which must be based on "a founded suspicion that criminal activity is afoot" (*id.*). The third level is a forcible stop and detention, and must be based on a "reasonable suspicion" that a person has committed, is committing or is about to commit a crime (*id.*). Finally, at the fourth level, an arrest may be made if a police officer has probable cause to believe that the person to be arrested has committed a crime, or an offense in the officer's presence (*id.*).

■ Applying these standards, we find that the evidence should have been suppressed. After pulling the driver of the Lexus over for a traffic infraction, Detective Mongelli observed his nervous demeanor, and learned that his license had been revoked. The detective then saw defendant arrive at the Lexus, receive a black bag from the driver, and walk away. These observations provided, at most, a founded suspicion of criminal activity. Defendant's sudden appearance at the Lexus gave the detective reason to believe that the driver, having been stopped by the police, had summoned defendant to dispose of an item that the driver did not want the police to find (*see People v Nobles*, 63 AD3d 528, 529 [1st Dept 2009], *lv denied* 13 NY3d 798 [2009] [founded suspicion of criminality present where police stopped a livery cab for a traffic violation and observed the defendant passenger nervously push a bag he had been carrying on his body away from himself]).

In response to this founded suspicion that criminal activity was afoot, Detective Mongelli was permitted to conduct a

common-law inquiry. But the police actions here went beyond a level two intrusion and constituted a level three stop and detention. Defendant was approached by Mongelli, who was in uniform, and loudly ordered to stop multiple times. Two other uniformed officers arrived in a police car with lights and siren engaged, and approached defendant from a different direction. Under these circumstances, we conclude that a seizure had occurred because "a reasonable person would have believed . . . that the [officers'] conduct was a significant limitation on his or her freedom" (*People v Bora*, 83 NY2d 531, 535 [1994]; *see Matter of Brandon D.*, 95 AD3d 776 [1st Dept 2012] [appellant seized where it was apparent he was not free to leave]). Furthermore, the detective's command to "turn the bag over" constituted at least a level three intrusion, requiring reasonable suspicion.

█ It is well established that a citizen has a right not to respond to law enforcement inquiries and to walk away from the police (*Illinois v Wardlow*, 528 US 119, 125 [2000] ["when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business"]; *People v May*, 81 NY2d 725, 728 [1992]; *People v Howard*, 50 NY2d 583, 586 [1980], *cert denied* 449 US 1023 [1980]). In *People v Moore* (6 NY3d 496, 500 [2006]), the Court of Appeals reaffirmed this principle and described an individual's "right to be let alone" as the distinguishing factor between the level of intrusion permissible under the common-law right to inquire and the right to make a forcible stop. The Court reasoned that

> "[i]f merely walking away from the police were sufficient to raise the level of suspicion to reasonable suspicion . . . the common-law right of inquiry would be tantamount to the right to conduct a forcible stop and the suspect would be effectively seized whenever only a common-law right of inquiry was justified" (*id.* at 500).

The Court concluded that to elevate a level two inquiry to a level three stop, the police must obtain additional information or make additional observations of suspicious behavior sufficient to establish reasonable suspicion (*id.* at 500-501). Because no such additional information or observations existed here, the police lacked reasonable suspicion to justify the seizure that occurred.

The People unpersuasively argue that defendant's walking away at a fast pace upon being approached by Detective Mongelli provided the requisite reasonable suspicion. Although a defendant's flight can be considered in conjunction with other at

tendant circumstances in determining whether an officer had reasonable suspicion (*People v Martinez*, 80 NY2d 444, 448 [1992]), there is no reasonable view of the evidence here that defendant "actively fled" (*People v Moore*, 6 NY3d at 501). Defendant did not run away from the detective, increase his pace, or dart behind a car or into a building. Nor did defendant suddenly change his direction upon the sight of the police. In fact, defendant walked toward the direction of Detective Mongelli and his patrol car.

Thus, this case stands in contrast to those cases where flight was found because the defendant engaged in furtive or evasive conduct (*see e.g. People v Emiliano*, 81 AD3d 436 [1st Dept 2011], *lv denied* 17 NY3d 794 [2011] [running away from the police]; *People v Austin*, 100 AD3d 1010 [2d Dept 2012], *lv denied* 21 NY3d 1002 [2013] [ducking behind a building]; *People v Flores*, 88 AD3d 902 [2d Dept 2011], *lv denied* 18 NY3d 858 [2011] [changing direction and increasing pace]). In light of the Court of Appeals jurisprudence on this issue, we cannot hold that defendant's walking at a hurried pace along the sidewalk, without more, was sufficient to constitute flight because that would impermissibly conflate a level two common-law inquiry with a level three forcible stop (*see Moore* at 500-501). Thus, the seizure that occurred here was not supported by reasonable suspicion, and the evidence should have been suppressed.

Contrary to the dissent's view, *People v Martinez* (80 NY2d 444 [1992], *supra*) does not support a finding of reasonable suspicion here. In *Martinez*, the defendant was seen removing an item known to be used in concealing drugs. Moreover, the defendant in *Martinez* ran with the police in pursuit. Here, although we find that Detective Mongelli had a founded suspicion of criminality, he did not see an item that he explicitly associated with a drug transaction. Moreover, defendant here did not run from the police, but actually walked toward their direction. Thus, the police did not have reasonable suspicion or even come close to it. As the Court of Appeals noted in *Moore*, conduct that triggers level two of the *De Bour* test only allows the police "to follow defendant while attempting to engage him—but not to seize him in order to do so" (6 NY3d at 500).

Although we find that the conduct here was sufficient to establish a founded suspicion of criminal activity, the dissent makes more of defendant's receipt of the plastic bag than we think is warranted on this record. The conduct here may be unusual, but no one saw any indication that the bag, or even the car, contained contraband (*see People v Robbins*, 83 NY2d

928, 930 [1994] [no reasonable suspicion where the defendant grabbed at his waistband after exiting stopped livery cab and then fled]). Finally, to the extent that *People v Oeller* (191 AD2d 355 [1st Dept 1993], *affd* 82 NY2d 774 [1993]), cited by the dissent, suggests that defendant's walking at a fast pace would be sufficient by itself to elevate the encounter to reasonable suspicion, we question its continued viability in light of the subsequent Court of Appeals ruling in *Moore*.

Accordingly, the judgment of the Supreme Court, New York County (Gregory Carro, J.), rendered December 1, 2009, convicting defendant, after a jury trial, of criminal possession of marijuana in the third degree, and sentencing him, as a second drug offender previously convicted of a violent felony, to a term of two years to be followed by two years' postrelease supervision, should be reversed, on the law and the facts, the motion to suppress granted, and the indictment dismissed.

MAZZARELLI, J.P. (dissenting). The facts leading up to defendant's arrest are not in dispute. Detective Raymond Mongelli pulled over Jamaine Glover because the car Glover was driving had illegally tinted windows. After Glover, who appeared nervous, could not produce a driver's license, Mongelli returned to his police cruiser to check Glover's license status on his mobile computer terminal. The computer revealed that Glover's license had been revoked. While still sitting in his cruiser, the officer looked up and noticed defendant approach Glover's open driver-side window and receive a small black plastic bag that Glover had handed him. Mongelli called for backup, got out of his cruiser, and followed defendant, who upon receipt of the bag had immediately begun walking away from Glover's car and towards the opposite side of the street. The officer told defendant, at least twice and in a loud voice, to stop, but defendant walked away briskly and appeared to be nervous. Mongelli then told defendant to turn over the bag. At around this time, two other police officers arrived on the scene. Defendant then complied with Mongelli's command to hand over the bag, by tossing it onto the trunk of a parked car. The bag opened and Mongelli recognized its contents as marijuana.

The majority acknowledges that defendant's acceptance of the bag from Glover gave rise to founded suspicion that criminal activity was afoot, the second "level" of police-citizen encounters described in *People v De Bour* (40 NY2d 210 [1976]). Further, "flight alone" may not create reasonable suspicion that criminal activity has been, is being, or is about to be committed (the third *De Bour* level) (*see People v Holmes*, 81 NY2d 1056, 1058

[1993]). However, this case does not involve flight alone. Rather, it involves flight attendant to behavior that, while perhaps not reaching the line that separates founded suspicion of criminal activity, which justifies only a common-law inquiry, from reasonable suspicion, which permits police to seize a suspect, came exceedingly close to it.

On point is *People v Martinez* (80 NY2d 444 [1992]). In *Martinez*, police patrolling in a neighborhood known for drug activity observed the defendant remove a metal "Hide-a-Key" box from the steel grate of a store window. The officers knew that such boxes are often used to stash drugs. They approached the defendant, who, realizing they were police officers, turned and ran a few steps into a grocery store. After the defendant handed off the box to his codefendant, the officers recovered it and discovered that it contained crack cocaine. The Court of Appeals affirmed the denial of the defendant's motion to suppress the drug evidence. The Court did not find that the defendant's taking the Hide-a-Key box gave rise to anything other than, at most, a founded suspicion that criminal activity was afoot, and observed that the defendant had every right to refuse a police inquiry and to flee the scene without creating reasonable suspicion (80 NY2d at 448). However, it went on:

> "[D]efendant's flight may be considered in conjunction with other attendant circumstances, namely, the time, the location, and the fact that defendant was seen removing an instrument known to the police to be used in concealing drugs. When coupled with defendant's immediate flight upon the officer's approach, the [removal of the Hide-a-Key box] in this narcotics-prone neighborhood establishes the necessary reasonable suspicion . . . such that pursuit by the officers was justified" (*id.* [internal quotation marks omitted]).

Where the attendant circumstances are much more equivocal, flight is insufficient to escalate the encounter. Thus, in *People v Moore* (6 NY3d 496 [2006]), cited by the majority, police approached the defendant after having received a radio call of a dispute involving an individual with a gun, which was based on an anonymous tip. Although the defendant matched the physical description of the purported gunman, there was no dispute, or even other people on the scene, when the officers arrived one minute after receiving the call. Upon their approach, the defendant walked away, and, even before they attempted an inquiry, the police drew their guns. The defendant then turned

away and continued to walk, at which point the police patted him down and discovered a gun. The Court reversed the denial of the defendant's motion to suppress the gun, finding that the defendant's decision to walk away was consistent with his "right to be let alone" (6 NY3d at 500). In contrast to this case, there was no other factor to couple to the act of flight. Indeed, the Court discounted the anonymous tip, finding that it was not predictive of any behavior and did not accurately portray the alleged criminal activity (*id.* at 499).

The facts of this case are much closer to *Martinez* than they are to *Moore*. The circumstances under which Glover handed over the bag left little doubt that the bag contained something which would have deepened Glover's predicament had Mongelli discovered it. Contrary to the majority's conclusion, it simply defies logic to believe that, while the obviously nervous Glover was waiting for Mongelli to confirm that he was driving on a revoked license, an offense which could subject his car to a search, he took the opportunity to hand an entirely innocent object to a person who just happened to appear at his car. As such, defendant's conduct hovered very close to the line which separates an officer's founded suspicion that criminal activity is afoot from reasonable suspicion that the defendant is in the process of committing a crime. When he ignored Mongelli's command to stop and submit to an inquiry, Mongelli gained a sufficient predicate to seize defendant and order him to turn over the bag.

To the extent that the majority contends that defendant's act of continuing to walk after Mongelli directed him to stop did not constitute "flight," I disagree. The majority provides no support for its implication that flight must involve "furtive or evasive conduct." Indeed, defendant's walking away from the scene, under the circumstances, was sufficient to create reasonable suspicion. In *People v Oeller* (191 AD2d 355 [1st Dept 1993], *affd* 82 NY2d 774 [1993]), a police officer observed the defendant pass money to another individual in exchange for an unidentified object that the officer, based on his experience and the specific location, believed to be a package of drugs. The officer approached both men, and the other individual "turned away" from him, while the defendant turned to face the officer. At this point the officer ordered the defendant to remove his hands from his pockets, which he did, revealing several vials of cocaine. This Court found that the exchange between the defendant and the individual gave rise to reasonable suspicion and itself justified a stop. However, this Court went on to state:

"In any event, even assuming, arguendo, that the police only had a common-law right of inquiry, upon their approach, the other participant in the drug transaction turned and left before the police could question either. This flight, *whether at a walk or faster pace*, only served to heighten the police suspicion. This, combined with the exchange of currency for an object 'in an area rampant with narcotics activity', 'negat[ed] all but the most implausible explanations for the transaction' " (191 AD2d at 356 [emphasis added], quoting *People v McRay*, 51 NY2d 594, 604 [1980]).

I disagree with the majority that *Oeller* was overruled by *Moore*. To be sure, the Court of Appeals in *Moore*, while holding that the defendant's merely walking away from the police was insufficient to create reasonable suspicion, observed that the level of suspicion may have been raised had the defendant "actively fled" (6 NY3d at 501). Again, however, the anonymous, unpredictive tip which gave rise to the right to inquire in that case was, by itself, highly equivocal. Something highly suggestive of criminal activity was required to create reasonable suspicion of such. By contrast, here, as well as in *Oeller*, the predicate information out of which the right to make a common-law inquiry arose was already strong. Accordingly, not much more was required to justify a seizure. I believe that defendant's continuing to walk after Detective Mongelli directed him to stop, at a brisk pace and with a nervous appearance, provided the necessary additional information. Further, that defendant may have walked in the general direction from which Mongelli was approaching is irrelevant, as it is clear that defendant was attempting to avoid being engaged by Mongelli.

Whether a police stop is justified is determined not by a mechanical application of each isolated action taken by a citizen and police officer in an encounter, but by the totality of the circumstances (*see People v Benjamin*, 51 NY2d 267, 271 [1980]). In suppressing the drugs recovered from defendant, the majority disregards this notion, because it fails to view defendant's flight in the context of his highly suspect act of receiving a plastic bag from Glover during a police-directed traffic stop. Because I believe that defendant's walking away from Detective Mongelli clearly justified a seizure of defendant based on reasonable suspicion of criminal activity, I would affirm the order of the motion court.

SWEENY, DEGRASSE and FREEDMAN, JJ., concur; MAZZARELLI, J.P., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered December 1, 2009, reversed, on the law and the facts, the motion to suppress granted, and the indictment dismissed.