■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY MERCADO, Appellant. [992 NYS2d 12]—

Judgment, Supreme Court, New York County (Bruce Allen, J., at suppression hearing; Thomas Farber, J., at plea and sentencing), rendered April 9, 2013, convicting defendant of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony drug offender, to a term of 3½ years, affirmed.

The court properly denied defendant's suppression motion. The totality of the information available to the police justified their request to search the trunk of defendant's car, and defendant validly consented to that search.

While patrolling a crime-prone neighborhood, in an unmarked car, nearing midnight on October 4, 2012, the arresting officer and his partner observed defendant in the driver's seat of a vehicle illegally parked near a fire hydrant. Defendant's companion exited the car and went briefly inside a nearby deli. While defendant was alone, an unidentified man approached the car. Defendant immediately exited the car and the officer observed the men having a very brief and seemingly wordless interaction in which they shook hands and either hugged or chest bumped each other. Although the arresting officer did not see anything exchanged between them, his suspicion was aroused about the possibility of a drug transaction.

Defendant's original companion returned and the two men drove off. The police followed the car and they observed defendant's companion lean forward in a manner suggestive of secreting something under his seat. They then observed defendant committing a second traffic violation and lawfully stopped the car, asking defendant for his license and registration. Defendant who was "sweating profusely" and crying, told police he did not have a license and that he did not want to go back to jail. Defendant could not produce any form of identification, and the car registration belonged to someone other than defendant or his companion.

At the police officer's request, defendant exited the vehicle; he was still visibly agitated and repeated that he did not want to go back to jail. The arresting officer patted defendant down and found nothing. Defendant was then asked by the officer whether he and the car were "straight." After defendant confirmed that they were, the arresting officer asked for defendant's consent to search the car, which was given. The interior of the car was searched and nothing was found. The arresting officer then asked defendant whether he could search the trunk of the car, and defendant consented to that search as well. Over 120 glassine envelopes of heroin were ultimately discovered in the trunk, and defendant admitted they belonged to him.

Once defendant revealed that his license was suspended, the officer had probable cause to arrest him for a misdemeanor (Vehicle and Traffic Law § 511) and was entitled to conduct a search of his person incident to the arrest (*see People v Troiano*, 35 NY2d 476 [1974]). In order to ask defendant for his consent to search the car, however, the police needed a founded suspicion that criminality was afoot (*People v Garcia*, 20 NY3d 317, 324 [2012]; *People v De Bour*, 40 NY2d 210, 223 [1976]). We conclude that based on the totality of known circumstances, the police had a founded suspicion that criminality was afoot. That

suspicion justified a common-law inquiry in the form of a request for defendant to consent to a search of the car, which also included the subsequent request to search the trunk (*see People v Battaglia*, 86 NY2d 755, 756 [1995]; *People v Loretta*, 107 AD3d 541 [1st Dept 2013], *lv denied* 22 NY3d 1157 [2014]). While nervousness, by itself, does not establish a founded suspicion of criminality (*Garcia*, 20 NY3d at 324), here it was coupled with other relevant factors, including the observed interaction between defendant and an unidentified man, defendant's admission that he was driving with a suspended license, his complete inability to provide any form of identification, that the car's registration was in the name of someone other than defendant or his passenger, and defendant's expressed concern that he would face reincarceration for a Vehicle and Traffic Law infraction (*see People v Devone*, 15 NY3d 106, 114 [2010]; *People v Major*, 115 AD3d 1, 4-5 [1st Dept 2014]).

The request for defendant's consent to search the trunk of the car was reasonably related in scope to the circumstances that justified the interference in the first place (*see People v William II*, 98 NY2d 93, 98 [2002]). Thus, the same founded suspicion that permitted the police to ask for consent to search the car extended to the request to search the trunk (*see Battaglia*, 86 NY2d at 756). The Court of Appeals' decision in *People v Battaglia* is directly on point. In *Battaglia*, the Court of Appeals held that a vehicle stopped at 3:00 a.m. for proceeding the wrong way down a one-way street, coupled with the driver producing a false identification, supported a finding that criminality was afoot sufficient to justify a common-law inquiry in the form of a request for consent to search the defendant's vehicle, including the trunk (*id.*). While defendant is correct that any concern the police may have had about some illegal object hidden under the passenger seat dissipated after the interior of the car was searched by the police, the other factors still present, which included driving without a license, identification and apparent connection to the registered owner of the car, supported a basis to request consent for a more thorough search of the vehicle. Contrary to the conclusion reached by the dissent, there was more than continued nervousness to support the request to search the trunk.

We also find that the People satisfied their heavy burden of proving the voluntariness of defendant's consent (*see generally People v Gonzalez*, 39 NY2d 122, 128 [1976]). In determining whether the consent was voluntary or coerced, the court considers the circumstances present, including whether the consent

was given while the individual was in police custody, how many officers were present, the personal background of the consenter, including his age and prior experience with the law, whether the consenter offered resistance and whether the police advised the consenter of his right to refuse to consent (*id.* at 128-131; *Matter of Daijah D.*, 86 AD3d 521 [1st Dept 2011]). No one circumstance is determinative of the voluntariness of consent (39 NY2d at 128). The suppression court found that the two officers testified credibly. At no time before the searches did either of the only two officers present draw their guns. The officers did not handcuff the defendant or his traveling companion, nor did they threaten defendant with arrest or actually arrest him before obtaining his consents. Defendant admitted to having prior contact with the criminal justice system. Although defendant appeared to be very nervous, he was cooperative, alert and offered no resistance to any of the actions being taken by the police before he gave his consents. The police officer's response that defendant "wasn't necessarily going back to jail" to defendant's repeated expressed concern about going to jail again was not an implicit threat that he would go to jail unless he gave consent to a search of the car (*see People v Sora*, 176 AD2d 1172, 1174 [3d Dept 1991], *lv denied* 79 NY2d 864 [1992]; *People v Fillion*, 160 AD2d 538 [1st Dept 1990], *cert denied* 498 US 1068 [1991]).

We perceive no basis for reducing the sentence. Concur—Friedman, J.P., Saxe, Feinman and Gische, JJ.

Acosta, J., dissents in a memorandum as follows: I would reverse, vacate the plea and sentence, grant defendant's motion to suppress to the extent of suppressing the physical evidence found in the trunk and statements defendant made to the police after the officer asked if he could search the trunk, and remand for further proceedings. While the facts that defendant committed a traffic infraction and hugged another man with no indicia of a drug transaction being committed, that a passenger in the car made somewhat furtive movements, and that defendant was nervous upon being stopped and said he did not want to go back to jail may have justified the request to search the inside of the car, upon finding nothing therein or on the defendant after a frisk, the officers lacked a founded suspicion that criminal activity was afoot to justify the request to search the trunk of the car (*People v Garcia*, 20 NY3d 317 [2012]; *People v Hollman*, 79 NY2d 181, 194 [1992]; *People v Hogencamp*, 295 AD2d 808, 810 [3d Dept 2002] [ordering suppression and dismissing indictment where police continued investigation after initial suspicions were exhausted, notwithstanding the continued nervousness in

the defendant's voice]; *People v Springer*, 92 AD2d 209, 212 [2d Dept 1983] [a fruitless frisk of the defendant's person decreased any objective suspicion of that defendant, contributing to finding that further investigation was unreasonable]; *Sampson v City of Schenectady*, 160 F Supp 2d 336, 344 [ND NY 2001] ["(a)ssuming for purposes of this motion that (the officers) did have reasonable suspicion to believe that (the) (p)laintiff was engaged in a narcotics transaction at the time they stopped him and that their search of (the) (p)laintiff was legally justified, that suspicion evaporated when they discovered that (the) (p)laintiff was not carrying any narcotics"]). I disagree that *People v Battaglia* (86 NY2d 755 [1995]) is directly on point as the majority asserts. In *Battaglia*, not only was the driver of the car seen driving the wrong way on a one-way street at 3:00 in the morning, when stopped, he gave the police a false name. Under these circumstances an officer could rightfully assume that the occupants of the car were attempting to hide something illegal in the car. The police were therefore justified in asking the defendant, the owner of the car and who was seated in the back seat, for consent to search the trunk. Here, contrary to the majority, the request to search the trunk was not reasonably related in scope to the circumstances which justified the interference in the first place (*People v William II*, 98 NY2d 93, 98 [2002]; *People v Quackenbush*, 88 NY2d 534, 541 [1996]).

Defendant's continued nervousness was simply insufficient indicium that criminal activity was afoot. As we held in *People v Garcia* (85 AD3d 28, 32-33 [1st Dept 2011], *mod on other grounds* 20 NY3d 317 [2012]), "There must be something more than mere nervousness on the part of the people in the stopped vehicle to establish a founded suspicion of criminal activity. Here, by describing unspecified motions as furtive, the officers were making conclusory assertions that the conduct was suspicious. The officers' unspecific testimony does not support a finding of founded suspicion of criminal activity" (citations omitted; *see also People v Irizarry*, 168 AD2d 377 [1st Dept 1990], *affd* 79 NY2d 890 [1992] [finding request to search improper because there was no founded suspicion, even though the record revealed that the defendant's hands were shaking during the police encounter]). In any event, with the information the police possessed at the time, the most plausible explanation for defendant's concern that he did not want to go back to jail was that he was driving without a valid license and feared incarceration for that offense.

Furthermore, consent obtained through an illegal request to perform a search is no consent at all (*Hollman*, 79 NY2d at 194

[ordering suppression "(b)ecause the defendant's consent was a product of the improper police inquiry"]; *People v Irizarry*, 79 NY2d at 892). In any event, even if the request for consent was authorized, I think the majority ignores the reality of a police stop when it finds that defendant's consent was voluntary and not coerced (*see People v Packer*, 49 AD3d 184, 187 [1st Dept 2008], *affd* 10 NY3d 915 [2008] [recognizing the "inherent potential for intimidation and coercion in police initiated encounters and the daunting burden to which the People are put when the voluntariness of a defendant's consent is at issue" (citations omitted)]). As we noted in *People v Turriago* (219 AD2d 383, 389 [1st Dept 1996], *mod on other grounds* 90 NY2d 77 [1997]), a defendant stopped for a traffic infraction can not "reasonably disregard the police and go about his business" (internal quotation marks omitted). Here, defendant, already facing a possible arrest for driving without a license and distraught and crying about the possibility of going back to jail, may have felt compelled to consent to a search of the trunk. Under these circumstances, telling defendant that he "wasn't necessarily going to back jail," could be easily construed as "as long as you cooperate and let us search the trunk."