People v Smith (2025 NY Slip Op 04317)

People v Smith

2025 NY Slip Op 04317

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, DELCONTE, AND KEANE, JJ.

381 KA 22-01194

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TIMOTHY SMITH, DEFENDANT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (J. SCOTT PORTER OF COUNSEL), FOR DEFENDANT-APPELLANT.
TIMOTHY SMITH, DEFENDANT-APPELLANT PRO SE.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (DAVID D. BASSETT OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered June 29, 2022. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him following a jury trial of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]). In both his main and pro se supplemental briefs, defendant contends that County Court erred in refusing to suppress physical evidence as a result of an alleged unlawful seizure of his person. We reject that contention.
Evidence at a suppression hearing established that, at 7:43 p.m. on the date defendant was arrested, an identified citizen called 911 to report that shots had been fired near 204 South Alvord Street in Syracuse and that at least one round hit the caller's vehicle. After that first call to 911, a dispatcher announced over police radio that "a male in a black hoodie just shot at the caller's vehicle" and was headed "northbound on Seward Street" on foot. At 7:45 p.m., officers arrived at the scene of the shooting and spoke with the 911 caller. At 7:49:14 p.m., the dispatcher updated the description of the suspect, stating that he was a Black male wearing black clothing traveling eastbound on Seward Street from South Alvord Street. At 7:50:48 p.m., two officers (first officer and second officer, respectively) were in the 100 block of Jasper Street, which is only a few blocks away from the shooting and is the continuation of Seward Street after its intersection with Highland Street. At that time, and having heard the relevant dispatch reports, those officers observed, according to the first officer's testimony, "a male, a Black male in all black, walking eastbound on Jasper Street."
The first officer determined that the male matched the "general description" of the suspect inasmuch as he was a "[B]lack male, in all black." At that point, the officers shone a spotlight on the male, exited their patrol vehicle and told the male "that [they] were responding to a shots-fired in the area and that he matched the description of the possible shooter." The first officer then asked the male, who was not out of breath and did not appear to be carrying any weapons, if the officers "could check him for any weapons." According to the first officer, his purpose was "[t]o detain" the suspect because "he matched the description of someone who had been seen in the area of a shots-fired, possible suspect in a shooting." The suspect agreed to a pat frisk but fled on foot before it could be conducted. The officers pursued and observed the suspect grabbing at his waistband, tossing a firearm into a yard, and scaling a fence in the 300 block of Beecher Street. After ceasing pursuit, the first officer radioed a description of the suspect as a bald, Black male, dressed in all black. Shortly thereafter, the first officer added to [*2]his description, stating that the suspect was wearing a white glove.
At approximately 7:56 p.m., another officer in the area found discarded clothes in a yard on Douglas Street, a few blocks away from Jasper Street. The clothing consisted of black sweatpants, a black sweatshirt, a black jacket and a white glove. Shortly thereafter, another officer observed defendant, a bald Black man, running near the intersection of Highland Street and Graves Street. The officer detained defendant, who was wearing shorts and a T-shirt, until the first officer arrived and identified defendant as the individual he had stopped moments earlier on Jasper Street. Defendant was then placed under arrest. The police later found a revolver in the area of Jasper Street where the first officer and second officer had seen the suspect toss what appeared to be a gun.
Considering only the testimony and other evidence admitted at the suppression hearing (see People v Gonzalez, 55 NY2d 720, 721-722 [1981], rearg denied 55 NY2d 1038 [1982], cert denied 456 US 1010 [1982]; People v Heverly, 230 AD3d 1534, 1535 [4th Dept 2024], lv denied 42 NY3d 1053 [2024]), we conclude that the initial stop of defendant was lawful as were the request to frisk defendant for weapons and the pursuit of defendant (see generally People v De Bour, 40 NY2d 210, 223 [1976]). Contrary to defendant's contention, the first officer and the second officer had a founded suspicion of criminality permitting them to approach defendant on Jasper Street and request information (see id.). Defendant was in temporal and geographic proximity to the crime and was a Black male in all black clothing. Although it was early evening on an autumn day, there is no evidence that there were any other pedestrians matching that general description in the vicinity (see People v Watkins, 221 AD3d 1430, 1432 [4th Dept 2023], affd 42 NY3d 1074 [2024]; People v McKinley, 101 AD3d 1747, 1749 [4th Dept 2012], lv denied 21 NY3d 1017 [2013]; see also People v Gayden, 126 AD3d 1518, 1518 [4th Dept 2015], affd 28 NY3d 1035 [2016]; see generally People v Moore, 6 NY3d 496, 498-499 [2006]; People v Hollman, 79 NY2d 181, 184 [1992]). We thus conclude that the police encounter was lawful at its inception (see De Bour, 40 NY2d at 220).
We further conclude that the officers' request for consent to frisk defendant was lawful. "In circumstances justifying a level two encounter, the officer may request an individual's consent to conduct a search, so long as the request is 'reasonably related in scope to the circumstances that justified the interference in the first place' " (People v Darby, 234 AD3d 708, 709-710 [2d Dept 2025], lv denied 43 NY3d 1007 [2025], quoting People v Mercado, 120 AD3d 441, 443 [2d Dept 2014], affd 25 NY3d 936 [2015]; see People v Dibble, 43 AD3d 1363, 1364 [4th Dept 2007], lv denied 9 NY3d 1032 [2008]; see generally People v Dunbar, 5 NY3d 834, 835 [2005]; Hollman, 79 NY2d at 191-192).
Inasmuch as the officers had the requisite founded suspicion of criminality, their request to frisk defendant for weapons was lawful, especially considering that the officers were investigating a shooting that occurred minutes earlier only a few blocks away (cf. Dunbar, 5 NY3d at 835). The degree of suspicion ripened from a founded suspicion of criminality to reasonable suspicion upon defendant's flight, thereby justifying the officers' pursuit (see Watkins, 221 AD3d at 1432; People v Thacker, 156 AD3d 1482, 1483 [4th Dept 2017], lv denied 31 NY3d 1018 [2018]; see also Gayden, 126 AD3d at 1518; see generally Moore, 6 NY3d at 498-499; Hollman, 79 NY2d at 184). The later recovery of "the abandoned gun was lawful inasmuch as the pursuit of defendant was lawful" (People v Daniels, 147 AD3d 1392, 1393 [4th Dept 2017], lv denied 29 NY3d 1077 [2017]; see also People v Davis, 142 AD3d 1387, 1388 [4th Dept 2016], lv denied 28 NY3d 1144 [2017]), and the officers' observation of defendant tossing a firearm during the pursuit "gave rise to probable cause to arrest defendant" (Gayden, 126 AD3d at 1518-1519; see Davis, 142 AD3d at 1388; cf. People v Hightower, 136 AD3d 1396, 1397 [4th Dept 2016]).
We thus conclude that the court properly refused to suppress any evidence related to defendant's stop, pursuit and arrest.
Contrary to defendant's contentions in his main brief, the conviction is supported by legally sufficient evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]) and, viewing the evidence in light of the elements of criminal possession of a weapon in the second degree as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict with respect to the two counts of which defendant was convicted is not against [*3]the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Defendant contends, in his pro se supplemental brief, that the verdict is repugnant. Inasmuch as defendant did not object to the verdict on that ground before the jury was discharged, he failed to preserve that contention for our review (see People v Alfaro, 66 NY2d 985, 987 [1985]; People v Callistro, 146 AD3d 795, 796-797 [2d Dept 2017], lv denied 29 NY3d 1029 [2017]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant further contends in his main brief that his conviction under Penal Law § 265.03 (3) was based on an uncharged theory. As defendant concedes, that contention is not preserved for review (see People v Ekiert, 232 AD3d 1275, 1276 [4th Dept 2024]; People v Harlow, 195 AD3d 1505, 1508 [4th Dept 2021], lv denied 37 NY3d 1027 [2021]; see generally People v Allen, 24 NY3d 441, 449-450 [2014]). Again, we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
We reject defendant's contention in his main brief that it was prejudicial error to allow a police officer to opine at trial that civilians often overstate the number of gunshots. The testimony was properly admitted to aid the jury in understanding something outside of their normal experience (see People v Rivers, 18 NY3d 222, 228 [2011]; People v Jones, 224 AD3d 1348, 1351 [4th Dept 2024], lv denied 41 NY3d 1019 [2024]). In any event, any error in the admission of that testimony was harmless (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
In both his main and pro se supplemental briefs, defendant contends that he was denied a fair trial by prosecutorial misconduct. To the extent that we are able to review defendant's contentions regarding prosecutorial misconduct on the record before us, we conclude that, even assuming, arguendo, that such contentions are preserved for our review, any improprieties did not " 'cause[ ] such substantial prejudice to defendant that he was denied due process of law' " (People v Tetro, 181 AD3d 1286, 1289 [4th Dept 2020], lv denied 35 NY3d 1070 [2020]; see generally People v Mott, 94 AD2d 415, 419 [4th Dept 1983]). To the extent that defendant contends in his pro se supplemental brief that the prosecutor displayed "false" evidence to the jury that was never admitted in evidence, that contention is based on evidence outside the record and must be raised by way of a CPL article 440 motion (see People v Dixon, 138 AD3d 1016, 1017 [2d Dept 2016], lv denied 27 NY3d 1131 [2016], reconsideration denied 28 NY3d 1027 [2016], cert denied 581 US 906 [2017], reh denied 581 US 1014 [2017]).
Viewing the evidence, the law, and the circumstances in totality and as of the time of representation, we also reject defendant's contention in his main brief that he was denied meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]). We further reject defendant's contention, raised in his main and pro se supplemental briefs, that the sentence is unduly harsh and severe.
Finally, we have reviewed defendant's remaining contentions and conclude that none warrants modification or reversal of the judgment.
All concur except Ogden, J., who dissents and votes to reverse in accordance with the following memorandum: I respectfully dissent inasmuch as I conclude that the pursuit of defendant was unlawful. At the time the two officers in question approached defendant, they mistakenly believed that they could properly detain defendant. The information they had before them, a general description of a suspect, gave them, as the majority agrees, a level two right to inquire (see People v Moore, 6 NY3d 496, 498-499 [2006]; People v De Bour, 40 NY2d 210, 223 [1976]). In other words, defendant, at the time the officers approached him, had the right to be let alone.
The majority concludes that the degree of suspicion ripened from founded suspicion of criminality to reasonable suspicion upon defendant's flight, thereby justifying the officers' pursuit. " 'Flight alone, however, or even in conjunction with equivocal circumstances that might justify a police request for information, is insufficient to justify pursuit because an individual has a right to be let alone and refuse to respond to police inquiry' " (People v Cleveland, — NY3d &mdash, &mdash, 2025 NY Slip Op 02144, *2 [2025], quoting People v Holmes, 81 NY2d 1056, 1058 [1993]). A level two founded suspicion of criminality plus flight cannot equate to level three reasonable suspicion or else a defendant's right to be let alone during a level [*4]two encounter will be rendered utterly meaningless. In my view, the majority ignores binding New York jurisprudence on this point in favor of a standard that erodes the rights that individuals maintain in a level two encounter. As the Court of Appeals recently reiterated, "an individual's flight from a level one or two police encounter, without more, does not provide the reasonable suspicion necessary to pursue them" (Cleveland, — NY3d at &mdash, 2025 NY Slip Op 02144, *1; see Moore, 6 NY3d at 500; Holmes, 81 NY2d at 1058), and defendant, during the lawful level two encounter, and even upon the officers' requests and his momentary acquiescence, retained his "right to be let alone and refuse to respond to police inquiry" (People v May, 81 NY2d 725, 728 [1992]). I conclude that there is no support in the record for determining that the officers in question could lawfully pursue defendant, and I would therefore reverse the judgment, grant that part of defendant's second omnibus motion seeking to suppress physical evidence, dismiss the superseding indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45.
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court