■ The People of the State of New York, Respondent, v Herbert W. Nichols, Appellant. [715 NYS2d 783] —Graffeo, J. Appeal from a judgment of the County Court of Columbia County (Leaman, J.), rendered April 9, 1999, convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree and loitering in the first degree.

Defendant was arrested when, in the course of a surveillance

operation conducted by the Community Narcotics Enforcement Team (hereinafter CNET) of the State Police, he and a codefendant were observed engaging in drug solicitation activities in the City of Hudson, Columbia County. After an unsuccessful attempt to suppress evidence related to the discovery that defendant was carrying 1,100 milligrams of cocaine on his person at the time of his arrest, defendant pleaded guilty to each of the charges against him: criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree and loitering in the first degree. He was sentenced to indeterminate terms of imprisonment of 3 to 10 years and 2⅓ to 7 years for the possession convictions and a definite term of 30 days in jail for the loitering conviction, to be served concurrently.

On appeal defendant first contests County Court's suppression ruling, asserting that the police conduct that led to the discovery of narcotics in his possession was unlawful. Upon review of the evidence presented at the suppression hearing, we disagree. County Court credited the testimony of the State Trooper who conducted the surveillance and described the sequence of events precipitating defendant's arrest. Acting on a citizen complaint that narcotics trafficking was occurring on Fourth Street in Hudson, the Trooper, an experienced member of CNET, began observing the vicinity from a building on September 17, 1998. At 2:50 P.M. that day, he saw the codefendant approach a woman on the street and spit a bag containing what appeared to be a white substance into her outstretched hand. In response, she handed the codefendant some money. Given that the transfer of a glassine envelope during a street encounter has been recognized as "the hallmark of an illicit drug exchange" (*People v McRay*, 51 NY2d 594, 604), the Trooper surmised he was witnessing an illegal drug sale.

Immediately thereafter, the Trooper observed the codefendant make a gesture with his head to defendant, who was standing across the street, in a manner that indicated to him that the two men were acquainted. Based on his training and experience, the Trooper interpreted those actions as a signal that a drug transaction had been successfully completed. Moments later, the codefendant and defendant approached each other for a brief conversation and then returned to their original posts on opposite sides of the street. At this juncture, defendant began bending over toward passing automobiles while making hand gestures. Again, utilizing his experience in investigating narcotics trafficking, the Trooper believed that defendant's conduct was in the nature of soliciting narcotics sales to passing motorists.

Two marked police cars that had been summoned by the surveillance officer then appeared on the scene. When defendant noticed the police vehicles, he began to run. However, in the course of his flight, he collided with the Trooper who had been watching his activities as he was headed toward the police vehicles. The Trooper recalled that, concerned for his own safety given this sudden physical contact with defendant, he pushed defendant to the sidewalk, at which time defendant spit out several bags containing a white substance that the Trooper recognized as likely containing crack cocaine. Two other police officers then assisted in defendant's arrest and a subsequent search of defendant's person yielded additional crack cocaine.

It is well settled "that the police may forcibly stop or pursue an individual if they have information which, although not yielding the probable cause necessary to justify an arrest, provides them with a reasonable suspicion that a crime has been, is being, or is about to be committed" (*People v Martinez*, 80 NY2d 444, 447; *see, People v Leung*, 68 NY2d 734, 736; *People v De Bour*, 40 NY2d 210, 223). In *People v Martinez* (*supra*), the Court of Appeals held that there was reasonable suspicion justifying the pursuit of an individual who was seen removing a device known to police as used to stash drugs in an area of excessive drug activity and who fled when he observed the approach of police officers. In this case, defendant was observed in an area known for narcotics trafficking talking to a person who had just participated in what appeared to be a drug transaction, engaging in conduct recognized by a police officer trained to investigate drug activity to constitute solicitation for the sale of drugs to passing motorists and attempting to run at the sight of marked police cars.

Assuming arguendo that the authorities did not have probable cause for an arrest when they appeared at the scene, their observations unquestionably rose to the level of reasonable suspicion sufficient to justify a forcible stop upon defendant's attempted flight from the area (*see, People v Martinez, supra*; *People v Defares*, 209 AD2d 875, 876, *lv denied* 84 NY2d 1030). Once the authorities observed defendant spitting bags of narcotics onto the sidewalk in the course of that detention, the evidence linking defendant to illegal activity was more than sufficient to provide probable cause to effect an arrest (*see, People v Belo*, 240 AD2d 964, 965, *lv denied* 91 NY2d 869; *People v Defares, supra*, at 877; *People v Pacer*, 203 AD2d 652, 654). Given that the police conduct leading to the arrest was lawful, the cocaine discovered as a result of a search incident

to that arrest was properly determined to be admissible (*see, People v Revander,* 254 AD2d 625, *lv denied* 92 NY2d 1053; *People v Harris,* 217 AD2d 791, *lv denied* 87 NY2d 846). Accordingly, County Court's suppression ruling will not be disturbed.

As for defendant's challenge to the *Sandoval* ruling made prior to his decision to plead guilty to the charges in the indictment, we decline to review that ruling since defendant forfeited his right to appeal this issue by pleading guilty (*see, People v Kilmer,* 228 AD2d 808, 808-809).

Finally, we reject defendant's contention that his sentence was harsh and excessive. We note that the sentence rendered was less than the maximum defendant could have received under statutory requirements (*see, e.g., People v Diaz,* 264 AD2d 879, *lv denied* 94 NY2d 879). As the record discloses no extraordinary circumstances justifying a reduction, particularly given defendant's criminal history which includes prior drug convictions and periods of incarceration, the last of which was completed only eight days before the commission of these offenses, we conclude that the sentence was neither harsh nor excessive (*see, People v Wilson,* 210 AD2d 520, 523, *lv denied* 85 NY2d 982; *People v Powell,* 209 AD2d 879, 882, *lv denied* 84 NY2d 1037).

Defendant's remaining contentions have been considered and determined to be either unpreserved for review or without merit.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.