■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIFFTON FLETCHER, Appellant. [15 NYS3d 797]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Garnett, J.), rendered September 12, 2012, convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Carroll, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

On a motion by a defendant to suppress physical evidence, the People have the burden of going forward to show the legality of the police conduct in the first instance (*see People v Whitehurst*, 25 NY2d 389, 391 [1969]; *People v Spann*, 82 AD3d 1013, 1014 [2011]; *People v Thomas*, 291 AD2d 462, 463 [2002]). "Implicit in this concept is that the testimony offered by the People in first presenting their case must be credible" (*People v Quinones*, 61 AD2d 765, 766 [1978], citing *People v Berrios*, 28 NY2d 361, 367-368 [1971]). Once the People establish the legality of the police conduct by credible evidence, the defendant bears the burden of establishing that the arrest was not based on probable cause or that the police conduct was otherwise illegal (*see People v Spann*, 82 AD3d at 1014; *People v Thomas*, 291 AD2d at 463; *cf. Matter of Robert D.*, 69 AD3d 714 [2010]). A hearing court's determination as to witness credibility is accorded great weight on appeal, as it saw and heard the witnesses, and its determination will not be disturbed unless clearly unsupported by the evidence (*see People v Wheeler*, 2 NY3d 370, 374 [2004]; *People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Cole*, 85 AD3d 1198, 1199 [2011]; *People v Barley*, 82 AD3d 996, 997 [2011]).

Here, the People met their burden of demonstrating the legality of the police conduct at issue. Officer Mourad testified that he had extensive experience with firearms arrests, having been involved in 40 or 50 gun arrests, and having personally made 10 of those arrests. Mourad also stated that he received training in recognizing the behavior of people carrying firearms, and that the most common area to carry a firearm is the waistband. With respect to the subject arrest, Mourad consistently testified that, as he rode in a police van that drove slowly past the defendant, he made eye contact with the defendant who then made a movement to adjust his waistband. Mourad further testified that, as a consequence of this movement, the defendant's jacket was pushed aside, thereby revealing to Mourad a "rectangular shape" under the defendant's clothing which he believed could be the "outline" of a firearm handle. Although it was dark at the time, the area was lit by a building light and a street lamp. Moreover, Mourad testified that he was in an elevated position in the van and that, as he looked back, diagonally, through the middle driver side window, he could clearly see the defendant on the sidewalk about 10 to 15 feet away. When viewed in its entirety, Mourad's testimony was not incredible, and we perceive no basis for disturbing the hearing court's decision to credit such testimony (*see People v*

*Durgey*, 186 AD2d 899, 901 [1992]; *cf. People v Lebron*, 184 AD2d 784, 785 [1992]).

"In determining whether an individual's actions rise to the level of reasonable suspicion, police officers are permitted to interpret the behavior in light of their training and experience" (*People v Solano*, 46 AD3d 1223, 1224 [2007]; *see People v Nichols*, 277 AD2d 715, 716-717 [2000]). Here, in contrast to the opinion of our dissenting colleague, the factual circumstances described by Mourad, coupled with the officer's experience and training, were sufficient to permit him to request information from the defendant (*see People v De Bour*, 40 NY2d 210 [1976]). The decision to make inquiry of the defendant did not stem from mere "whim or caprice," but was objectively based upon observation of the defendant's actions as filtered through the officer's experience (*People v Hollman*, 79 NY2d 181, 190 [1992]; *cf. People v McIntosh*, 96 NY2d 521, 526 [2001]). Officer Mourad specifically testified that he believed the shape of the concealed object which he observed under the defendant's clothing was the outline of a gun (*see People v Henderson*, 85 AD3d 663 [2011]). Mourad explained that the defendant moved in a way that he recognized, from experience, as typical of attempts to adjust a firearm kept in a waistband (*see People v Henderson*, 85 AD3d at 663), and further testified that the defendant began to increase his pace after the officers exited their vehicle and announced their presence (*see generally People v Anderson*, 91 AD3d 789, 789 [2012]). Accordingly, there was reasonable suspicion to stop and frisk the defendant (*see Matter of George G.*, 73 AD3d 624 [2010]; *People v Quan*, 182 AD2d 506 [1992], *lv denied* 80 NY2d 836 [1992]).

Contrary to the defendant's contention, trial counsel was not ineffective because she failed to challenge the prosecutor's explanations for using peremptory challenges against two potential jurors. "A defendant is not denied effective assistance of trial counsel merely because counsel does not make a motion or argument that has little or no chance of success" (*People v Stultz*, 2 NY3d 277, 287 [2004]; *see People v Caban*, 5 NY3d 143, 152 [2005]). In addition, when viewed as a whole, the record demonstrates that the defendant received the effective assistance of counsel (*see Strickland v Washington*, 466 US 668, 688 [1984]; *People v Caban*, 5 NY3d at 152).

The defendant's contention that certain comments made by the prosecutor during his summation deprived him of a fair trial is unpreserved for appellate review, as defense counsel either did not object to the challenged remarks or made only general objections (*see* CPL 470.05 [2]; *People v Tonge*, 93 NY2d

838, 839-840 [1999]; *People v Terry*, 122 AD3d 882 [2014]). In any event, the contention is without merit. The prosecutor's comments were responsive to the defense summation, constituted fair comment on the evidence, or were within the broad bounds of rhetorical comment permissible in closing arguments (*see People v Thompson*, 118 AD3d 822, 823 [2014], *lv granted* 24 NY3d 1089 [2014]; *People v Mobley*, 116 AD3d 1067, 1068 [2014]). Furthermore, since the challenged summation remarks were not improper, defense counsel's failure to object to the remarks did not constitute ineffective assistance of counsel (*see People v Callender*, 123 AD3d 840 [2014]; *People v Mobley*, 116 AD3d at 1068).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Skelos, J.P., Sgroi and Duffy, JJ., concur.

Hinds-Radix, J., dissents, and votes to reverse the judgment of conviction, on the law, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, dismiss the indictment, and remit the matter to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50, with the following memorandum, in which Hall, J., concurs: The defendant's conviction of criminal possession of a weapon in the second degree was based on an encounter on a public street during which the defendant was stopped and frisked by the police and a gun was seized from his person.

On February 19, 2011, at about 7 p.m., Officer Mourad and two other officers were patrolling a high crime area known as an Impact Zone. The area was a residential neighborhood consisting of apartment buildings and private homes. The officers were in uniform, in a marked police van. As the van proceeded north on New York Avenue at five miles per hour, Mourad observed two men walking northbound. Mourad testified at the suppression hearing that he "saw it was two males." The man closest to the van, later identified as the defendant, looked back at the van and made eye contact with Mourad. Mourad told the driver of the police van to stop so he could "zoom in on him." The van came to a stop approximately 10 to 15 feet away from the men.

Mourad noted that the defendant was wearing a T-shirt, a hoodie which was zipped up, and a black leather jacket which was unzipped and came below his waist. Mourad testified at the suppression hearing that "[i]mmediately following the eye contact" the defendant "went to . . . his right-hand side of his waistband closest to me as he's possibly tucking something or trying to hide an object." Mourad concluded that "he's possibly concealing a weapon or something of such matter." Mourad

claimed that, as the defendant adjusted his waistband, "he pulled his jacket back and caused his hoodie to tighten on him which made me able to see" a "rectangular shape" through the defendant's clothing. Mourad described the rectangular shape as "possibly" the "outline" of the handle of a firearm.

Mourad exited the van and said "police" two to three times, but the defendant kept walking, and sped up his walk. Meanwhile, the defendant's companion was screaming, "why you stop my friend." Mourad grabbed the defendant, placed one hand on the defendant's chest, and one hand on his waist, and felt what appeared to be the handle of a firearm. The defendant responded "You got me. I'm not going to fight you." The defendant was placed under arrest, and a 9-millimeter firearm was recovered from under the defendant's hoodie.

At the conclusion of the suppression hearing, the Supreme Court denied that branch of the defendant's omnibus motion which was to suppress physical evidence based upon a finding that Mourad's testimony justifying the stop and frisk was credible. The court rejected the defendant's argument that it was physically impossible for Mourad to see what he claimed to have seen, at night, from 10 to 15 feet away. However, those findings should not end our inquiry.

In *People v De Bour* (40 NY2d 210 [1976]), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters when a police officer is acting in a law enforcement capacity (*see People v Moore*, 6 NY3d 496, 498-499 [2006]). The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective credible reason, not necessarily indicative of criminality (*see People v De Bour*, 40 NY2d at 223; *People v Moore*, 6 NY3d at 498). The second level, known as the "common-law right of inquiry," requires a founded suspicion that criminal activity is afoot, and permits a somewhat greater intrusion short of a forcible seizure (*see People v Moore*, 6 NY3d at 498-499). The third level permits a seizure, meaning that a police officer may forcibly stop and detain an individual, based upon a "reasonable suspicion" that the individual is committing, has committed, or is about to commit a crime (*People v De Bour*, 40 NY2d at 223; *see People v Moore*, 6 NY3d at 499). Finally, the fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime (*see People v Moore*, 6 NY3d at 499; *People v De Bour*, 40 NY2d at 223).

Here, according to Officer Mourad, he initially decided to "zoom in on" the defendant because he was male and they made

eye contact. Since the defendant was walking on a public residential street in the early evening, the police did not even satisfy the first level of police encounters, which requires an objective credible reason for requesting information (*see People v McIntosh*, 96 NY2d 521, 526 [2001]).

The actions of the defendant in response to the police encounter did not justify the defendant's forcible stop, which required a "reasonable suspicion" that an individual is committing, has committed, or is about to commit a crime (*see Matter of Shakir J.*, 119 AD3d 792 [2014]). The so-called outline of the handle of a firearm was not described in detail (*see People v Henderson*, 85 AD3d 663 [2011]). Rather, it was described as a "rectangular shape," which would fit the description of many common objects, including wallets and cell phones. Officer Mourad's description of a rectangular shape in the area of the defendant's waistband is no more informative than the description of a "bulge" in the waistband area, which this Court has repeatedly ruled is not sufficient to justify a pat-down search (*see People v Harris*, 122 AD3d 942, 945 [2014]; *People v Kennebrew*, 106 AD3d 1107, 1109 [2013]).

The defendant had the right to be left alone. Therefore, the fact that the defendant walked away when the police called upon him to stop did not raise the level of the encounter (*see People v Moore*, 6 NY3d at 501; *Matter of Shakir J.*, 119 AD3d at 795).

Accordingly, the stop and frisk of the defendant was unlawful, and that branch of the defendant's omnibus motion which was to suppress physical evidence should have been granted.

In view of the foregoing, I vote to reverse the judgment of conviction, on the law, grant that branch of the defendant's omnibus motion which was to suppress physical evidence, dismiss the indictment, and remit the matter to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50.