People v Jones (2018 NY Slip Op 06114)





People v Jones


2018 NY Slip Op 06114


Decided on September 19, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 19, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
LEONARD B. AUSTIN
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2016-00631
 (Ind. No. 2630/14)

[*1]The People of the State of New York, respondent,
v
Lindy Jones, appellant.


Paul Skip Laisure, New York, NY (A. Alexander Donn of counsel), for appellant.
Richard A. Brown, District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Hannah X. Collins of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (John B. Latella, J.), rendered December 10, 2015, convicting him of criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree, and resisting arrest, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Deborah Stevens Modica, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials.
ORDERED that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials are granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
By indictment, the defendant was charged with criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree, and resisting arrest. Following a hearing, the Supreme Court denied those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials. The defendant, as part of a negotiated disposition, entered a plea of guilty to the counts charged in the indictment. The court rendered a judgment of conviction, and the defendant appeals.
On appeal, the defendant challenges the suppression determination. We agree with the defendant that the Supreme Court should have granted those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials.
Initially, to the extent the People contend that the defendant's challenge to the police conduct is unpreserved for appellate review, the People's contention is without merit. While defense counsel made no argument at the suppression hearing, the defendant, through counsel, had moved, inter alia, to suppress the physical evidence and his statement to law enforcement officials, arguing, among other things, that the police unlawfully seized his person and property and that his custodial statement was tainted. The Supreme Court denied those branches of his omnibus motion. [*2]Accordingly, the defendant's contentions in this regard are preserved for appellate review (see CPL 470.05[2]).
Turning to the merits, in People v De Bour (40 NY2d 210), the Court of Appeals "set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime" (People v Moore, 6 NY3d 496, 498-499; see People v De Bour, 40 NY2d at 223). "The Court's purpose in De Bour was to provide clear guidance for police officers seeking to act lawfully in what may be fast-moving street encounters and a cohesive framework for courts reviewing the propriety of police conduct in these situations" (People v Moore, 6 NY3d at 499).
Although "the police may observe a defendant provided that they do so unobtrusively and do not limit defendant's freedom of movement by so doing'" (People v Foster, 302 AD2d 403, 404, quoting People v Howard, 50 NY2d 583, 592), "[p]olice pursuit of an individual significantly impede[s]' the person's freedom of movement and thus must be justified by reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Holmes, 81 NY2d 1056, 1057-1058, quoting People v Martinez, 80 NY2d 444, 447).
Here, at the pretrial hearing, a police officer testified that on April 23, 2014, at approximately 1:50 a.m., he and his partner were on anti-crime patrol in plainclothes and in an unmarked police vehicle in Queens. A sergeant, wearing plainclothes, was in the police vehicle as well. They were driving on a one-way street. The area was "fairly well-lit" with light from houses, an elementary school, and streetlights. The police vehicle was traveling slowly, approximately five miles per hour, and its headlights were on. The testifying officer, who was seated in the front passenger seat, saw the defendant walking on the sidewalk to the officer's right, approximately 25 feet ahead, with the defendant's back to the officer. The defendant was walking in the direction away from the officer, and the defendant's right hand was in his right jacket pocket. The officer "observed [the defendant] leaning over and he had somewhat of a slight bulge that appeared that he was holding with his right hand in his pocket." The officer was not able to observe the shape of any object in the defendant's pocket, and he could not tell what was in the defendant's pocket.
The unmarked police vehicle drove "right next to" the defendant, and the officer said, "police, can you stop for a second," or "police, hold on." The defendant "turned toward [the officer], looked at [the officer], nodded his head, picked up his left hand, got on the cell phone and picked up his pace and started walking faster." The defendant's right hand "was steady on the right hand pocket," and the defendant was still leaning over to his right side. He was not running.
The officer testified: "I exited the vehicle on foot. I walked onto the sidewalk. As I was directly behind the defendant, once again I said police, stop. He didn't answer me. At which point, as I got closer to the defendant picking up with his pace, I observed him holding the end of a firearm sticking out from his jacket pocket." According to the officer, he had exited the vehicle to talk to the defendant. When the officer exited the vehicle, he had not seen the defendant commit any suspicious activity; the officer wanted to talk to the defendant "[j]ust to talk to him, inquire his business as if—ask him what he was doing in the street, in front of the school at that time." The officer did not have any information about a crime having been committed at that location, and the defendant did not fit the description of a person for whom the officer was looking. After the officer saw the firearm, the officer "raced" toward the defendant and, assisted by his partner and his sergeant, was able to recover the firearm.
The police intrusion here was not justified. This encounter began as a level two intrusion, with the officer, while seated in the vehicle, stating "police" and asking the defendant to [*3]stop, then exiting his vehicle, walking onto the sidewalk, again stating "police" and asking the defendant to stop. Thereafter, the officer's pursuit of the defendant, by getting "closer to the defendant picking up with his pace," constituted a level three intrusion under De Bour, requiring a reasonable suspicion that the defendant was involved in a felony or misdemeanor (see People v Holmes, 81 NY2d at 1057-1058). However, the circumstances, such as that the defendant had a nondescript bulge in his right jacket pocket, was leaning to the right side, and walked away from the officer without complying with the officer's requests for him to stop, did not support a reasonable suspicion of particularized criminal action. After all, "a bulging jacket pocket is hardly indicative of criminality. As [the Court of Appeals has] recognized, a pocket bulge, unlike a waistband bulge, could be caused by any number of innocuous objects'" (People v Holmes, 81 NY2d at 1058, quoting People v De Bour, 40 NY2d at 221), and "an individual has a right to be let alone' and refuse to respond to police inquiry" (People v Holmes, 81 NY2d at 1058). Since this level three intrusion was not justified, it cannot be validated by the officer's subsequent observation of the firearm (see People v McIntosh, 96 NY2d 521, 527; People v De Bour, 40 NY2d at 215-216).
Moreover, under the circumstances of this case, the defendant's subsequent statement to law enforcement officers must be suppressed as the product of the unlawful police conduct (see People v Perez, 88 AD3d 1016; see also Wong Sun v United States, 371 US 471, 485).
Without the evidence that should have been suppressed, the physical evidence and the defendant's statement, there would not be legally sufficient evidence to prove the defendant's guilt of criminal possession of a weapon in the second and third degrees. Additionally, in light of the unlawful police conduct that preceded the arrest, there would not have been an authorized arrest, an authorized arrest being an element of the crime of resisting arrest (see People v Kevin W., 91 AD3d 676, 678, affd 22 NY3d 287). Thus, in this particular case, the indictment must be dismissed (see People v Kevin W., 91 AD3d 676).
In view of our determination, we need not address the defendant's remaining contentions.
LEVENTHAL, J.P., AUSTIN and DUFFY, JJ., concur.
BARROS, J., concurs, and votes to reverse the judgment, on the law, grant those branches of the defendant's omnibus motion which were to suppress physical evidence and his statement to law enforcement officials, and dismiss the indictment, with the following memorandum:
While I agree with the De Bour analysis set forth in the majority opinion (see People v De Bour, 40 NY2d 210), I would not reach that issue since, in my view, the People failed to meet their burden of going forward to establish the legality of police conduct in the first instance because the police officer's testimony was incredible as a matter of law and patently tailored to nullify constitutional objections (see People v Berrios, 28 NY2d 361, 367-368; People v Clermont, 133 AD3d 612, 613; People v Hernandez, 40 AD3d 777, 778).
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Clermont, 133 AD3d at 613 [internal quotation marks omitted]; see People v Berrios, 28 NY2d at 367-368; People v Hernandez, 40 AD3d at 778). " Implicit in this concept is that the testimony offered by the People in first presenting their case must be credible'" (People v Fletcher, 130 AD3d 1063, 1064, affd 27 NY3d 1177, quoting People v Quinones, 61 AD2d 765, 766; see People v Berrios, 28 NY2d at 367). "A hearing court's determination as to witness credibility is accorded great weight on appeal, as it saw and heard the witnesses, and its determination will not be disturbed unless clearly unsupported by the evidence" (People v Fletcher, 130 AD3d at 1064; see People v Wheeler, 2 NY3d 370, 374; People v Prochilo, 41 NY2d 759, 761). However, "[w]here a testifying officer claims to have seen that which common sense dictates could not have been seen, courts have repeatedly deemed this testimony patently tailored to meet constitutional objections" (People v Spann, 82 AD3d 1013, 1014 [internal quotation marks omitted]). " The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, [*4]contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case'" (People v Garafolo, 44 AD2d 86, 88, quoting 22 NY Jur, Evidence § 649; see People v Joyner, 126 AD3d 1002, 1007).
"Once the People establish the legality of the police conduct by credible evidence, the defendant bears the burden of establishing that the arrest was not based on probable cause or that the police conduct was otherwise illegal" (People v Fletcher, 130 AD3d at 1064; see People v Spann, 82 AD3d at 1014).
Here, the officer's testimony that he was able to observe a "slight bulge" in the right pocket of the defendant's jacket at 1:50 a.m., while seated in a vehicle and from a distance of 25 feet away from the defendant's back, was incredible as a matter of law, and has all appearances of having been patently tailored to nullify constitutional objections. Therefore, in my view, the People failed to meet their burden of establishing the legality of the police conduct in the first instance (see People v Clermont, 133 AD3d at 613; see also People v Berrios, 28 NY2d at 367-368; People v Hernandez, 40 AD3d at 778), and that branch of the defendant's omnibus motion which was to suppress the gun should have been granted on that ground.
Even if I were to defer to the Supreme Court's determination to credit the officer's testimony, I would agree with the majority's opinion in its entirety.
ENTER:
Aprilanne Agostino
Clerk of the Court