People v Dedmon (2025 NY Slip Op 06072)

People v Dedmon

2025 NY Slip Op 06072

Decided on November 5, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 5, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ROBERT J. MILLER
HELEN VOUTSINAS
PHILLIP HOM, JJ.

2022-05809
 (Ind. No. 547/19)

[*1]The People of the State of New York, respondent,
v
Andre Dedmon, appellant. Twyla Carter, New York, NY (Alyssa Gamliel of counsel), for appellant.

Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Charles T. Pollak, and Rahul K. Sukesh of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (John F. Zoll, J.), rendered June 21, 2022, convicting him of criminal possession of a weapon in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.
ORDERED that the judgment is affirmed.
Following a suppression hearing, the Supreme Court denied that branch of the defendant's omnibus motion which was to suppress physical evidence. Thereafter, the defendant was convicted, upon his plea of guilty, of one count of criminal possession of a weapon in the second degree, in violation of Penal Law § 265.03(1)(b). The defendant appeals.
Contrary to the defendant's contention, the Supreme Court properly denied that branch of his omnibus motion which was to suppress a loaded gun recovered from the defendant. At the suppression hearing, the People proffered, among other things, the testimony of Police Officer William Lauria, who testified that, on the day of the arrest, November 9, 2018, he, along with his fellow officer, were in plain clothes on patrol in an unmarked vehicle in Queens. Lauria testified that, among other things, he observed a blue "Lincoln Mercury" car (hereinafter the Lincoln) fail to stop at a stop sign at an intersection and also observed a plastic cup being thrown from the passenger side of the vehicle. He also testified that, upon observing this, he initiated a traffic stop of the Lincoln by turning on the unmarked vehicle's overhead lights and siren.
Lauria indicated that, upon his approach to the driver, he observed the "slight odor of marijuana" and "a small trace amount of burnt marijuana cigarette" visible in the Lincoln's center cup holder. Lauria testified that he ordered the driver and the defendant, who was sitting in the front passenger seat of the vehicle, to exit the vehicle and proceed to the rear of the Lincoln, after the driver admitted, when asked about the marijuana smell and the burnt marijuana cigarette, that there was more marijuana in the Lincoln.
Lauria also testified that he observed the defendant exit the Lincoln from the front passenger seat in "an awkward fashion, not typical with a typical walk to the back of the [Lincoln]." Additionally, he testified that, as he observed the defendant approach the rear of the Lincoln, "he took the right side of his body and hugged it up against the [Lincoln] and he had his arms raised the entire time." According to Lauria, the defendant raised his arms of his own volition without police instruction. Lauria also testified that he noticed a "bulge on the right side" of the defendant's body "that was not consistent with, you know, someone wearing their pants with their belt all the way around" and he shined his flashlight on that area of the defendant's waist and observed a black handle, which he believed to be that of a firearm. Lauria testified that, thereafter, the defendant was restrained with handcuffs and searched, whereupon a loaded .38 Smith and Wesson revolver was recovered, among other things.
At the hearing, the People also proffered video footage which corroborated, in all material respects, Lauria's testimony. Although the defendant did not call any witnesses, he proffered the video footage of another officer who was at the scene, which likewise supported Lauria's testimony.
"On a motion to suppress, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Harris, 192 AD3d 151, 157-158 [internal quotation marks omitted]; see People v Black, 237 AD3d 738, 739). "Implicit in this concept is that the testimony offered by the People in first presenting their cause must be credible" (People v Harris, 192 AD3d at 158 [internal quotation marks omitted]; see People v Austin, 203 AD3d 732, 736). "A hearing court's determination as to witness credibility is accorded great weight on appeal, as it saw and heard the witnesses, and its determination will not be disturbed unless clearly unsupported by the evidence" (People v Julien, 201 AD3d 948, 950 [internal quotation marks omitted]; see People v Fletcher, 130 AD3d 1063, 1064, affd 27 NY3d 1177). "[If] the People establish the legality of the police conduct by credible evidence, the defendant bears the burden of establishing that the arrest was not based on probable cause or that the police conduct was otherwise illegal" (People v Harris, 192 AD3d at 158 [internal quotation marks omitted]; see People v Fletcher, 130 AD3d at 1064). The defendant can discharge his or her burden of proof by establishing the facts in issue on a preponderance of the evidence standard (see People v Etienne, 233 AD3d 705, 706; People v Dunbar, 188 AD3d 1247, 1248).
"[W]here an arrest or search is made without a warrant, the reviewing court must be supplied with the description upon which the police acted and sufficient evidence to make its own determination of whether the person arrested or the item seized reasonably fit that description" (People v Balkman, 35 NY3d 556, 560 [internal quotation marks omitted]; see People v Dodt, 61 NY2d 408, 415). "The court must consider whether or not the action of the police was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible" (People v Mortel, 197 AD3d 196, 203 [internal quotation marks omitted]; see People v Joyette, 219 AD3d 628, 630).
Here, contrary to the defendant's contention, the record supports the Supreme Court's determination that Lauria's testimony was credible (see People v Julien, 201 AD3d at 950; People v Nelson, 199 AD3d 708, 710).
According to the credible evidence, the police had probable cause to stop the Lincoln, after observing the commission of two traffic violations (see People v Guthrie, 25 NY3d 130, 132; People v Burgos, 198 AD3d 672, 672); the police lawfully ordered the defendant to exit the Lincoln (see People v Clements, 221 AD3d 1023, 1025; People v Henderson, 197 AD3d 663, 664).
The police also had a reasonable suspicion that the defendant was armed before frisking the defendant's clothing (see People v Goldson, 136 AD3d 1053, 1054; People v Fletcher, 130 AD3d at 1065).
The defendant's contention that his plea of guilty was not knowing, intelligent, and voluntary is without merit. Here, the record of the plea proceeding demonstrates that the defendant's [*2]plea of guilty was a knowing, intelligent, and voluntary choice (see People v McDonnell, 214 AD3d 827, 827; People v Mack, 168 AD3d 1100, 1101).
The defendant's remaining contention is academic (see People v Fuller, 212 AD3d 734, 735; People v Frantz, 1 AD3d 455, 456).
DUFFY, J.P., MILLER, VOUTSINAS and HOM, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court