[847 NE2d 1141, 814 NYS2d 567]

The People of the State of New York, Respondent, v Calvin Moore, Appellant.

Argued January 3, 2006; decided February 21, 2006

## POINTS OF COUNSEL

*Appellate Advocates,* New York City (*Sarah J. Berger* and *Lynn W.L. Fahey*), for appellant. An anonymous tip describing appellant, together with appellant's walking away when the police approached the area, did not provide reasonable suspicion of criminal activity justifying a gunpoint seizure where the tip's allegation of criminal activity was wholly uncorroborated and appellant walked away before the police made any inquiry of appellant or made clear that they wanted to speak with him. (*Florida v J.L.,* 529 US 266; *People v William II,* 98 NY2d 93; *People v Holmes,* 81 NY2d 1056; *People v Bora,* 83 NY2d 531; *People v Martinez,* 80 NY2d 444; *People v Chestnut,* 51 NY2d 14; *People v De Bour,* 40 NY2d 210; *People v May,* 81 NY2d 725; *Illinois v Wardlow,* 528 US 119.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Diana Villanueva* and *Leonard Joblove* of counsel), for respondent. The hearing court properly denied suppression of the gun because the police had reasonable suspicion to stop and frisk defendant. (*Maryland v Wilson,* 519 US 408; *People v Batista,* 88 NY2d 650; *People v De Bour,* 40 NY2d 210; *People v Cantor,* 36 NY2d 106; *People v Celaj,* 1 NY3d 588; *People v Pines,* 99 NY2d 525; *People v Oeller,* 82 NY2d 774; *Florida v J.L.,* 529 US 266; *Alabama v White,* 496 US 325; *People v Holmes,* 81 NY2d 1056.)

### OPINION OF THE COURT

Chief Judge KAYE.

On November 12, 1997, at approximately 9:35 A.M., Police Officers Racioppo and Molinaro were on a routine patrol in their marked police car when they received a radio call of a dispute involving a male Black with a gun, described as approximately 18 years of age, wearing a gray jacket and red hat—information that came from an anonymous phone tip. The officers drove to the scene without their lights flashing and arrived within approximately one minute of receiving the radio call. No dispute was taking place. They did, however, see a male Black on the corner—defendant—wearing a gray jacket and red hat, with no similar individuals in the vicinity.

The officers exited their vehicle and walked toward defendant, who began to walk away. Without attempting any verbal inquiry, the officers immediately drew their guns and yelled "police, don't move." The defendant then turned and continued

to walk a short distance toward a closed gate before stopping. When the officers told defendant to put up his hands, he made a movement toward his waistband as he raised his arms. Officer Racioppo patted down defendant, felt a hard object in his left jacket pocket and recovered a gun.

Defendant was arrested and charged with criminal possession of a weapon. He moved to suppress the gun, and Supreme Court held a hearing at which Officer Racioppo was the sole witness. After the hearing, based on the foregoing description of the incident, Supreme Court denied defendant's motion to suppress. The Appellate Division affirmed, holding that

> "[t]he detailed anonymous tip authorized the officers to exercise their common-law right of inquiry only and did not provide reasonable suspicion to stop and frisk the defendant. Nevertheless, a frisk was justified by the defendant's conduct thereafter. Specifically, upon finding his path blocked, the defendant reached toward his waistband, whereupon the officers possessed reasonable suspicion for the forceable stop and frisk that revealed the defendant's possession of a .25 caliber handgun" (*People v Moore*, 13 AD3d 395, 396-397 [2004] [citations omitted]).

Although we agree with the Appellate Division that the anonymous tip authorized only an inquiry, the police here failed to simply exercise their common-law right to inquire. Instead—in ordering him at gunpoint to remain where he was—the police forcibly stopped defendant as soon as they arrived on the scene. Because the officers did not possess reasonable suspicion until after defendant reached for his waistband, however—by which time defendant had already been unlawfully stopped—the gun should have been suppressed. Defendant's later conduct cannot validate an encounter that was not justified at its inception (*see People v De Bour*, 40 NY2d 210, 215 [1976]; *People v William II*, 98 NY2d 93, 98 [2002]).

In *De Bour*, we set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to

forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime (*De Bour*, 40 NY2d at 223; *see also People v Hollman*, 79 NY2d 181, 184-185 [1992]). The Court's purpose in *De Bour* was to provide clear guidance for police officers seeking to act lawfully in what may be fast-moving street encounters and a cohesive framework for courts reviewing the propriety of police conduct in these situations. Having been the basis for decisions in likely thousands of cases over the past 30 years, *De Bour* has become an integral part of our jurisprudence.

Here, the gunpoint stop unquestionably constituted a seizure of defendant's person—*De Bour*'s level three—and required reasonable suspicion (*see People v Chestnut*, 51 NY2d 14 [1980] [where police draw their firearms and order a suspect to "freeze," this is a seizure, the propriety of which is measured by the reasonable suspicion standard]; *People v Townes*, 41 NY2d 97 [1976] [ordering a suspect to "freeze" with guns drawn amounts to a seizure of the suspect by police]).

An anonymous tip cannot provide reasonable suspicion to justify a seizure, except where that tip contains predictive information—such as information suggestive of criminal behavior—so that the police can test the reliability of the tip (*see Florida v J.L.*, 529 US 266 [2000]; *William II*, 98 NY2d at 99). Indeed, in *J.L.*, a unanimous United States Supreme Court held that an anonymous tip regarding a young Black male standing at a particular bus stop, wearing a plaid shirt and carrying a gun, was insufficient to provide the requisite reasonable suspicion to authorize a stop and frisk of the defendant.

The State argued in *J.L.* that the tip was sufficient to justify the police intrusion because the defendant matched the detailed description provided by the tipster. The Supreme Court held, however, that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person" (529 US at 272). The Court further explained that an anonymous tip could demonstrate the tipster's reliability and thus provide reasonable suspicion of criminal activity only if it predicted actions subsequently engaged in by the suspect.

Here, the tip did not provide any predictive information, nor did it accurately portray the alleged criminal activity. The tipster

reported a dispute involving a man with a gun, but when the police arrived within a minute of receiving the radio call, they did not find a dispute in progress. Under *J.L.* and *William II*, such a tip was insufficient to afford the police reasonable suspicion of criminal activity, and thus did not support the gunpoint stop.

That defendant began walking away from the scene when the police arrived does not render the gunpoint stop permissible. As the Appellate Division recognized, the anonymous tip triggered only the police officers' common-law right of inquiry. This right authorized the police to ask questions of defendant—and to follow defendant while attempting to engage him—but not to seize him in order to do so. Thus, defendant remained free to continue about his business without risk of forcible detention (*see People v May*, 81 NY2d 725, 728 [1992] ["The police may not forcibly detain civilians in order to question them . . . without a reasonable suspicion of criminal activity and once defendant indicated . . . that he did not wish to speak with the officers, they should not have forced him to stop without legal grounds to do so. Any other rule would permit police seizures solely if circumstances existed presenting a potential for danger" (citation omitted)]).

Indeed, the very right to be let alone—the right of citizens not to be stopped at gunpoint by police, based on anonymous tips—is the distinguishing factor between the level of intrusion permissible under the common-law right of inquiry and the right to stop forcibly. If merely walking away from the police were sufficient to raise the level of suspicion to reasonable suspicion—and a suspect who attempted to move could be required to remain in place at the risk of forcible detention— the common-law right of inquiry would be tantamount to the right to conduct a forcible stop and the suspect would be effectively seized whenever only a common-law right of inquiry was justified (*see People v Holmes*, 81 NY2d 1056, 1058 [1993] ["If these circumstances (observing defendant standing in an area known for drug trafficking with an unidentified bulge in his jacket pocket) could combine with flight to justify pursuit, then in essence the right to inquire would be tantamount to the right to seize, and there would, in fact, be no right to be let alone" (internal quotation marks omitted)]).

This simply is not the law. Under our settled *De Bour* jurisprudence, to elevate the right of inquiry to the right to forcibly stop and detain, the police must obtain additional information or make additional observations of suspicious conduct sufficient

to provide reasonable suspicion of criminal behavior. Had defendant, for example, reached for his waistband prior to the gunpoint stop or actively fled from the police, such conduct, when added to the anonymous tip, would have raised the level of suspicion.* However, "[w]e have frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause. It is equally true that innocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand" (*De Bour*, 40 NY2d at 216 [citations omitted]).

Finally, addressing the dissent, the Court's decision today is wholly in line with our precedent: a forcible stop requires reasonable suspicion that the suspect has committed a crime, not merely the founded suspicion—triggering the officers' common-law right of inquiry—present here. Surely the possibility that defendant had a gun merited investigation by the police, just not immediately at gunpoint.

Accordingly, the order of the Appellate Division should be reversed, defendant's motion to suppress granted and the indictment dismissed.

R.S. SMITH, J. (dissenting). It is settled that neither an anonymous tip unconfirmed by subsequent events (*Florida v J.L.*, 529 US 266 [2000]; *People v William II*, 98 NY2d 93 [2002]) nor a person's evident wish to avoid contact with the police (*People v May*, 81 NY2d 725 [1992]) is alone enough to justify "a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor," and thus to permit "a forcible stop and detention of that person" (*People v De Bour*, 40 NY2d 210, 223 [1976]). Today, the Court goes a step further, holding that a combination of the two—an anonymous tip *and* avoidance of contact with the police—is not enough. I would not take this step, because I think it limits too strictly the ability of police officers to make the common sense, spur-of-the-moment judgments that street encounters demand and that are essential to achieving a proper balance between individual rights and law enforcement.

The rules that neither an anonymous tip nor the avoidance of police officers can alone create reasonable suspicion are not

---

* Although defendant reached a gate that prevented him from continuing to walk in the direction he had been walking, he could have continued to walk away from the officers in a different direction had he wanted to flee. Indeed, there was no finding that defendant's conduct constituted flight.

intuitively self-evident. Indeed, they are a departure—justified, the courts have decided, by valid policy reasons—from a simple, commonsense interpretation of "reasonable suspicion." In common sense, of course it is reasonable for a police officer to *suspect* that a person who an anonymous caller says is committing a crime may indeed be committing one; it would be unreasonable to conclude, or to assume, that the anonymous caller was telling the truth, but it is not unreasonable to want to look into the possibility. Equally clearly, any reasonable police officer will become suspicious when a person, on seeing the police officer, promptly decides to travel in the opposite direction; there are no doubt many perfectly legitimate reasons for wanting to shun contact with the police, but it is still reasonable to suspect the existence of a reason that is not legitimate.

Nevertheless, the courts do not allow police officers to detain someone with no more basis than an anonymous tip or avoidance of the police, and have artificially defined "reasonable suspicion" in a way that prohibits such detentions. I imply no criticism of the decisions that establish these rules. They are based on important interests that compete with society's interest in efficient law enforcement. In the case of the anonymous tip, if reasonable suspicion could be founded on that alone, it "would enable any person seeking to harass another to set in motion an intrusive, embarrassing police search" or detention, while concealing his or her identity (*Florida v J.L.*, 529 US at 272). In the case of a person who avoids the police, to make that without more a basis for "reasonable suspicion" would unacceptably abridge that person's "right 'to be let alone' and refuse to respond to police inquiry" (*People v Holmes*, 81 NY2d 1056, 1058 [1993] [citation omitted]).

While I accept the reasons that have led courts to hold that a police officer's suspicion based on either of these two grounds is not reasonable, it does not logically follow that suspicion is unreasonable when both grounds exist together. At that point, it seems to me, the reasons to be suspicious are powerful enough that society's interest in efficient law enforcement should prevail. Thus, in this case, when Officers Racioppo and Molinaro observed both that defendant matched the description the anonymous caller had given of a man with a gun, and that he began to walk away at the sight of the police, the possibility that he did indeed have a gun deserved to be investigated, even at the cost of a temporary interference with his liberty. It was possible, of course, based on what the officers knew, that defen-

dant was the innocent victim of a spiteful caller trying to harass him, and that he was also among those innocent people who prefer to exercise their "right to be let alone" rather than talk to the police, but I cannot bring myself to blame the officers for suspecting that the truth might be otherwise.

Accordingly, I would affirm the order of the Appellate Division.

Judges G.B. SMITH, CIPARICK, GRAFFEO and READ concur with Chief Judge KAYE; Judge R.S. SMITH dissents and votes to affirm in a separate opinion in which Judge ROSENBLATT concurs.

Order reversed, etc.