Matter of Herman M. (2006 NY Slip Op 52015(U))

[*1]

Matter of Herman M.

2006 NY Slip Op 52015(U) [13 Misc 3d 1227(A)]

Decided on October 23, 2006

Family Court, Bronx County

Malave-Gonzalez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 23, 2006

Family Court, Bronx County
In the Matter of Herman M. A Person Alleged to be a Juvenile Delinquent, Respondent.
D-XXXXX/06

Nelida Malave-Gonzalez, J.
The Law Guardian moved pursuant to F.C.A. § 330.2, C.P.L. § 710.20 and C.P.L. § 710.60 to suppress physical evidence, to wit, one black metal air gun recovered from the respondent's person. A Dunaway/Mapp [FN1] hearing was held on October 16, 2006.
FINDINGS OF FACT
At the suppression hearing the Presentment Agency put forth one witness, Officer Robert Telese of the NYPD 52nd precinct. Officer Telese testified that on February 27, 2006 at approximately 9:30p.m. he was working with a partner on foot patrol in the vicinity of West Fordham Road and Davidson Ave, Bronx County. He received a radio run which informed that an armed robbery was occurring at Devoe Park which was approximately four blocks from his location. Officer Telese indicated that the radio run of a "1030 with a gun" provided a detailed description of the perpetrators (Tr. pg. 16, ln. 22-24). The description was "four males, black approximately 18 to 20years of age, one wearing a black leather jacket with a gray hoodie and skullie cap. The other three wearing black hoodies and blue jeans fleeing [the] park on West Fordham Road heading towards Jerome Avenue." (Tr. pg. 17, ln. 7-12).Officer Telese and his partner headed towards the location and saw four males fitting the description in the radio run heading towards them. This was approximately three to four minutes after receiving the radio run. Officer Telese described the pace at which the four individuals were moving as "almost in the nature of speed walking. Moving at a fast pace." (Tr. Pg. 19, ln. 24-5). The area was lit by street lights, no stores were open and no other individuals were in the area . Officer Telese and his partner approached the individuals with caution, stopped them and asked to "see their hands". (Tr. pg. 21, ln. 12-13). He then proceeded to frisk one of the individuals, whom he later identified as the respondent. Officer Telese "felt something hard in his waistband feeling to [him] as a grip of a handgun." (Tr. pg. 21, ln. 14-16). As he proceeded to pull out the gun from the [*2]respondent's pant's pocket, the respondent attempted to run away but was apprehended approximately five steps away. The gun recovered was a metal air gun with the appearance of a 9 millimeter handgun. The respondent was then arrested and the gun vouchered. Officer Telese repeatedly stated that the reason for the pat down frisk of the individuals was the result of the information he received of a robbery with a gun, however on cross examination, when confronted with a copy of the sprint report, Officer Telese conceded that the word gun was not reflected in the sprint report. (Tr. pg. 29, ln. 1-2). Further, there was no height or weight description of the perpetrators. 
CONCLUSIONS OF LAW
Hearsay information from an anonymous informant is viewed under the standard of reliability and basis of knowledge. See generally Aguillar v Texas, 378 U.S. 108 (1964); Spinelli v. United States, 393 U.S. 410 (1969). However, the reliability of the informant is not assumed and corroboration is necessary to support the reasonable suspicion that the defendant is the person that the information referred to. Florida v. JL, 529 U.S. 266 (2000).
Street encounters of citizens by the police are scrutinized under the four tier test set forth in People v.Debour, 40 NY2d 210 (1976). A level one inquiry allows the police officers to request information from a citizen as to his identity, destination or reason for being in a specific area. The questions are supposed to so unintrusive as to allow a person to reasonably believe he is not the subject of a criminal investigation. A level two inquiry, which is referred to as a "common law inquiry" is a more aggressive, intimidating and invasive line of questioning which focuses on a particular person as the target of a criminal investigation. Under level three, the police officers may in fact seize a citizen when he possesses enough information for which he can articulate a reasonable suspicion that criminal activity is afoot and this person is believed to be the perpetrator. And finally, level four occurs when probable cause to effectuate an arrest exists.
Recently, the New York Court of Appeals re-examined the forcible stop of citizens under Debour. People v Moore, 6 NY3d 496 (2006). The Court held that where there is an anonymous tip of a person with a weapon "to elevate the right of inquiry to the right to forcibly stop and detain, the police must obtain additional information or make additional observations of suspicious conduct to provide reasonable suspicion of criminal behavior." 6 NY3d 496, 500 (2006).In Moore, the police officers received information, from an anonymous tip, of a dispute involving a black male with a gun, approximately 18 years of age, wearing a gray jacket and red hat. When the officers approached the defendant, who fit the description, he began to walk away. No verbal inquiry was made, the officers drew their guns and yelled "police don't move." The defendant was then told again to put up his hands at which time the defendant made a movement towards his waistband. It was at this time that the officers in Moore, proceeded to pat down the defendant and recovered the gun.The Court reasoned that the officers acted hastily indicating "had [the] defendant . . . reached for his waistband prior to the gunpoint stop or actively fled from the police, such conduct, when added to the anonymous tip, would have raised the level of suspicion." Moore at 501. As a result of the impermissible police conduct the gun was suppressed.
In the case at bar, the respondent and the other three individuals were observed within three to four minutes "moving at a fast pace" down the street in the vicinity of the alleged robbery. The officers further observed the respondent and the others to fit the description that came over the radio run. [*3]However, this description was the product of an anonymous tip. The innocuous behavior of the four individuals moving at a fast pace towards the officers does not by itself heighten the level of scrutiny available to the officers. Thus, corroboration was necessary to justify any intrusion other than a common law inquiry. This Court acknowledges the safety concerns surrounding the possibility that the respondent or any of the other individuals may have possessed a weapon based on the radio run of an armed robbery and the officers may undertake precautionary measures to ensure their safety.[FN2] However, the immediate pat down frisk of the respondent without any verbal inquiry is beyond the limits of a common law inquiry under Debour and Moore6 NY3d at 500.In People v. Driscoll, 13 Misc 3d 197 (2006), the Court found reasonable a request that the defendant put his hands on a fence in light of the fact that the defendant fit the description of an armed suspect, was found in close proximity to the alleged scene of the crime, heading in the direction conveyed less than one minute after the anonymous informants observation. The police were aware that the defendant may be armed and requested that he place his arms on a fence as a safety precaution. The defendant repeatedly failed to comply with the officers requests and reached towards his waistband. The officer then drew his gun, cuffed the defendant and frisked him. The Court reasoned that the "slight intrusion" of requesting that the defendant put his hands on the fence was justified due to the information that the respondent may be armed in conjunction with the more than obvious similarities of the informant's description of the defendant. The frisk was further justified due to the defendant's repeated refusal to comply with the officers reasonable requests and the respondent's gesture towards his waistband. Thus, the weapon recovered was admissible.
Driscoll, however, is distinguishable from the instant case because the respondent never failed to comply with the request to show his hands nor did he make any movement towards his waistband or pant's pocket. In fact, based on Officer Telese's testimony, the respondent was never afforded an opportunity to comply with or reject the officer's request. Nor was he ever questioned. It should be noted that although the respondent attempted to run while the officer frisked him, the impermissible police conduct had already occurred and thus respondent's actions cannot be considered to determine whether the frisk was justified. As such this Court finds that the motion to suppress is granted and the air gun recovered from the respondent during the impermissible search of the respondent is inadmissible at the fact-finding hearing.
This constitutes the decision of the court.
Dated:October 23, 2006ENTER
_______________________________
[*4]
Hon. Nelida Malave-Gonzalez, J.F.C.

Footnotes

Footnote 1: Dunaway v. New York, 442 U.S. 200 (1979); Mapp v Ohio, 367 U.S. 643 (1961).

Footnote 2: While this Court acknowledges that Officer Telese conceded that the actual word "gun" was never used in the radio run, this Court nonetheless credits his testimony that the radio run made reference to an armed robbery.