Mazzarelli, J.E
(dissenting). The facts leading up to defendant’s arrest are not in dispute. Detective Raymond Mongelli pulled over Jamaine Glover because the car Glover was driving had illegally tinted windows. After Glover, who appeared nervous, could not produce a driver’s license, Mongelli returned to his police cruiser to check Glover’s license status on his mobile computer terminal. The computer revealed that Glover’s license had been revoked. While still sitting in his cruiser, the officer looked up and noticed defendant approach Glover’s open driver-side window and receive a small black plastic bag that Glover had handed him. Mongelli called for backup, got out of his cruiser, and followed defendant, who upon receipt of the bag had immediately begun walking away from Glover’s car and towards the opposite side of the street. The officer told defendant, at least twice and in a loud voice, to stop, but defendant walked away briskly and appeared to be nervous. Mongelli then told defendant to turn over the bag. At around this time, two other police officers arrived on the scene. Defendant then complied with Mongelli’s command to hand over the bag, by tossing it onto the trunk of a parked car. The bag opened and Mongelli recognized its contents as marijuana.
The majority acknowledges that defendant’s acceptance of the bag from Glover gave rise to founded suspicion that criminal activity was afoot, the second “level” of police-citizen encounters described in People v De Bour (40 NY2d 210 [1976]). Further, “flight alone” may not create reasonable suspicion that criminal activity has been, is being, or is about to be committed (the third De Bour level) (see People v Holmes, 81 NY2d 1056, 1058 *8 [1993]). However, this case does not involve flight alone. Rather, it involves flight attendant to behavior that, while perhaps not reaching the line that separates founded suspicion of criminal activity, which justifies only a common-law inquiry, from reasonable suspicion, which permits police to seize a suspect, came exceedingly close to it.
On point is People v Martinez (80 NY2d 444 [1992]). In Martinez, police patrolling in a neighborhood known for drug activity observed the defendant remove a metal “Hide-a-Key” box from the steel grate of a store window. The officers knew that such boxes are often used to stash drugs. They approached the defendant, who, realizing they were police officers, turned and ran a few steps into a grocery store. After the defendant handed off the box to his codefendant, the officers recovered it and discovered that it contained crack cocaine. The Court of Appeals affirmed the denial of the defendant’s motion to suppress the drug evidence. The Court did not find that the defendant’s taking the Hide-a-Key box gave rise to anything other than, at most, a founded suspicion that criminal activity was afoot, and observed that the defendant had every right to refuse a police inquiry and to flee the scene without creating reasonable suspicion (80 NY2d at 448). However, it went on:
“[Defendant's flight may be considered in conjunction with other attendant circumstances, namely, the time, the location, and the fact that defendant was seen removing an instrument known to the police to be used in concealing drugs. When coupled with defendant’s immediate flight upon the officer’s approach, the [removal of the Hide-a-Key box] in this narcotics-prone neighborhood establishes the necessary reasonable suspicion . . . such that pursuit by the officers was justified” {id. [internal quotation marks omitted]).
Where the attendant circumstances are much more equivocal, flight is insufficient to escalate the encounter. Thus, in People v Moore (6 NY3d 496 [2006]), cited by the majority, police approached the defendant after having received a radio call of a dispute involving an individual with a gun, which was based on an anonymous tip. Although the defendant matched the physical description of the purported gunman, there was no dispute, or even other people on the scene, when the officers arrived one minute after receiving the call. Upon their approach, the defendant walked away, and, even before they attempted an inquiry, the police drew their guns. The defendant then turned *9 away and continued to walk, at which point the police patted him down and discovered a gun. The Court reversed the denial of the defendant’s motion to suppress the gun, finding that the defendant’s decision to walk away was consistent with his “right to be let alone” (6 NY3d at 500). In contrast to this case, there was no other factor to couple to the act of flight. Indeed, the Court discounted the anonymous tip, finding that it was not predictive of any behavior and did not accurately portray the alleged criminal activity (id. at 499).
The facts of this case are much closer to Martinez than they are to Moore. The circumstances under which Glover handed over the bag left little doubt that the bag contained something which would have deepened Glover’s predicament had Mongelli discovered it. Contrary to the majority’s conclusion, it simply defies logic to believe that, while the obviously nervous Glover was waiting for Mongelli to confirm that he was driving on a revoked license, an offense which could subject his car to a search, he took the opportunity to hand an entirely innocent object to a person who just happened to appear at his car. As such, defendant’s conduct hovered very close to the line which separates an officer’s founded suspicion that criminal activity is afoot from reasonable suspicion that the defendant is in the process of committing a crime. When he ignored Mongelli’s command to stop and submit to an inquiry, Mongelli gained a sufficient predicate to seize defendant and order him to turn over the bag.
To the extent that the majority contends that defendant’s act of continuing to walk after Mongelli directed him to stop did not constitute “flight,” I disagree. The majority provides no support for its implication that flight must involve “furtive or evasive conduct.” Indeed, defendant’s walking away from the scene, under the circumstances, was sufficient to create reasonable suspicion. In People v Oeller (191 AD2d 355 [1st Dept 1993], affd 82 NY2d 774 [1993]), a police officer observed the defendant pass money to another individual in exchange for an unidentified object that the officer, based on his experience and the specific location, believed to be a package of drugs. The officer approached both men, and the other individual “turned away” from him, while the defendant turned to face the officer. At this point the officer ordered the defendant to remove his hands from his pockets, which he did, revealing several vials of cocaine. This Court found that the exchange between the defendant and the individual gave rise to reasonable suspicion and itself justified a stop. However, this Court went on to state:
*10 “In any event, even assuming, arguendo, that the police only had a common-law right of inquiry, upon their approach, the other participant in the drug transaction turned and left before the police could question either. This flight, whether at a walk or faster pace, only served to heighten the police suspicion. This, combined with the exchange of currency for an object ‘in an area rampant with narcotics activity’, ‘negat[ed] all but the most implausible explanations for the transaction’” (191 AD2d at 356 [emphasis added], quoting People v McRay, 51 NY2d 594, 604 [1980]).
I disagree with the majority that Oeller was overruled by Moore. To be sure, the Court of Appeals in Moore, while holding that the defendant’s merely walking away from the police was insufficient to create reasonable suspicion, observed that the level of suspicion may have been raised had the defendant “actively fled” (6 NY3d at 501). Again, however, the anonymous, unpredictive tip which gave rise to the right to inquire in that case was, by itself, highly equivocal. Something highly suggestive of criminal activity was required to create reasonable suspicion of such. By contrast, here, as well as in Oeller, the predicate information out of which the right to make a common-law inquiry arose was already strong. Accordingly, not much more was required to justify a seizure. I believe that defendant’s continuing to walk after Detective Mongelli directed him to stop, at a brisk pace and with a nervous appearance, provided the necessary additional information. Further, that defendant may have walked in the general direction from which Mongelli was approaching is irrelevant, as it is clear that defendant was attempting to avoid being engaged by Mongelli.
Whether a police stop is justified is determined not by a mechanical application of each isolated action taken by a citizen and police officer in an encounter, but by the totality of the circumstances (see People v Benjamin, 51 NY2d 267, 271 [1980]). In suppressing the drugs recovered from defendant, the majority disregards this notion, because it fails to view defendant’s flight in the context of his highly suspect act of receiving a plastic bag from Glover during a police-directed traffic stop. Because I believe that defendant’s walking away from Detective Mongelli clearly justified a seizure of defendant based on reasonable suspicion of criminal activity, I would affirm the order of the motion court.
*11 Sweeny, DeGrasse and Freedman, JJ., concur; Mazzarelli, J.E, dissents in a separate opinion.
Judgment, Supreme Court, New York County, rendered December 1, 2009, reversed, on the law and the facts, the motion to suppress granted, and the indictment dismissed.