People v Brown (2019 NY Slip Op 03305)





People v Brown


2019 NY Slip Op 03305


Decided on April 30, 2019


Appellate Division, First Department


Manzanet-daniels, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 30, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, P.J., Rosalyn H. Richter, Sallie Manzanet-Daniels, Peter Tom, Peter H. Moulton, Justices.


1787/14 8575 

[*1]The People of the State of New York, Respondent,
v
Paris Brown also known as Steve Diop, Defendant-Appellant.



Defendant appeals from the judgment of the Supreme Court, Bronx County (Efrain Alvarado, J.), rendered June 22, 2015, as amended July 13, 2015, convicting him, upon his plea of guilty, of criminal possession of a weapon in the third degree, and imposing sentence.




Seymour W. James, Jr., The Legal Aid Society, New York (Rachel L. Pecker of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (David A. Slott and Justine J. Braun of counsel), for respondent.



MANZANET-DANIELS, J.


The police lacked the requisite reasonable suspicion to frisk defendant based on the tip of an anonymous caller and what the People characterize as the officers' "confirmatory observations."
The police may not stop and frisk a person based solely on information furnished by an anonymous source that the person is carrying a gun (see Florida v J.L., 529 US 266, 271 [2000]). Since an anonymous tip "seldom demonstrates the informant's basis of knowledge or veracity," it can only give rise to reasonable suspicion if accompanied by sufficient indicia of reliability (id. at 270 [internal citation omitted]). The tip must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person" (id. at 272 [police lacked reasonable suspicion to stop and frisk the defendant based on a tip from an anonymous caller that a young black man in a plaid shirt standing at a specified bus stop possessed a firearm]).
Here, the police received an anonymous tip that a black man in a bodega wearing a black coat with a fur hood had a gun and drugs in his pocket. The radio run did not transmit the identity of the caller nor the basis for the caller's knowledge. The caller provided no "predictive [*2]information" to corroborate the tip, nor was it apparent that the caller possessed insider knowledge or was in an excited condition so as to render the tip more reliable.[FN1]
When the police arrived on the scene, approximately one minute later, they observed someone fitting defendant's description inside the bodega. They observed one other black man, as well as two men of Middle Eastern descent behind the counter. The police observed no one selling drugs, and indeed, no furtive or suspicious behavior. The police did not see the outline of a gun in defendant's pocket, nor did they observe movements indicating that he was carrying a gun. The employees of the bodega responded "yes" when asked whether everything was okay. Thus, when the police entered the bodega, they had no additional information indicative of criminality and made no observations of suspicious conduct or conduct that would pose a risk to the officers' safety or the safety of others. The tip had proven reliable only "in its tendency to identify a determinate person," and not in its "assertion of illegality" (J.L., 529 US at 272), which was insufficient to justify a stop (id.; see Moore, 6 NY3d 496 [anonymous tip regarding a dispute involving an 18-year-old black male at a specified location did not furnish reasonable suspicion]).
One of the officers asked defendant if everything was okay, and he replied in the affirmative. Defendant then attempted to pass by the officers and exit the store. He was prevented from exiting when one of the officers "sidestepped to [his] right," in order to "prevent [defendant] from leaving the store." The officer testified at the hearing that they "decided to frisk [defendant] for [their] safety, since it came over as male with a firearm and he fit the description." They walked defendant to the counter, which was 5 to 10 feet away. Defendant put his hands on the counter, and the officers proceeded to frisk him. The officer testified that defendant placed his hand inside his jacket pocket, whereupon he used force to pull defendant's wrist from the pocket. The officer testified that when he grabbed defendant's wrist a silver firearm fell to the ground.
The People argue that defendant's action in putting his hand in his pocket gave rise to reasonable suspicion. The problem with this argument is that defendant was already seized prior to this point. He was seized when the officers, having no more than a level two right to inquire, blocked his exit from the bodega, walked him to the counter, and directed him to put his hands on the counter. Defendant's reaching into his own pocket after the illegal seizure and frisk did not validate a police intrusion that was not justified at its inception (J.L., 529 US at 271). Only [*3]information known to the police at the time of an arrest is relevant for determining whether the arrest was justified. "Where a police encounter is not justified in its inception, it cannot be validated by a subsequently acquired suspicion" (see People v William II, 98 NY2d 93, 98 [2002]).
Defendant's attempt to leave the store did not have the effect of increasing the officer's level of suspicion and escalating the encounter. There was no testimony that defendant ran, walked hurriedly, or even that he walked away in an evasive or suspicious manner. As the Court of Appeals has had occasion to observe, "If merely walking away from the police were sufficient to raise the level of suspicion . . . the common-law right of inquiry would be tantamount to the right to conduct a forcible stop and the suspect would be effectively seized whenever only a common-law right of inquiry was justified" (Moore, 6 NY3d at 500 [internal citation omitted]; see also People v Major, 115 AD3d 1, 6 [1st Dept 2014] [walking at a hurried pace, without more, is insufficient to constitute flight]).
People v Arias (142 AD3d 874, 875 [1st Dept 2016], lv denied 28 NY3d 1070 [2016]), is distinguishable on its facts. Arias did not hold that an anonymous caller's present sense impressions alone suffice to establish reasonable suspicion; in Arias, we stressed that an anonymous tip "was accompanied by several indicia of reliability," including predictive information which proved reliable (id. at 875). Indeed, People v Vasquez (88 NY2d 561 [1996]), cited by Arias, emphasizes that the "key components" of the present sense impressions, a member of the res gestae family of exceptions, "are contemporaneity and corroboration" (id. at 575 [emphasis added]). There was no such corroboration in this case.
Accordingly, the judgment of the Supreme Court, Bronx County (Efrain Alvarado, J.), rendered June 22, 2015, as amended July 13, 2015, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree, and
sentencing him, as a second felony offender, to a term of 2½ to 5 years, should be reversed, on the law and the facts, and the indictment dismissed.
All concur.
Order, Supreme Court, Bronx County (Efrain Alvarado, J.), rendered June 22, 2015, as amended July 13, 2015, reversed, on the law and the facts, and the indictment dismissed.
Opinion by Manzanet-Daniels, J. All concur.
Acosta, P.J., Richter, Manzanet-Daniels, Tom, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 30, 2019
CLERK



Footnotes

Footnote 1:In People v Argyris (24 NY3d 1138 [2014]), a case involving vehicular stops, a divided Court of Appeals debated the nature of corroboration required for an anonymous tip. The judges disagreed over whether "predictive information" was a sine qua non of the corroboration requirement, or merely one indicium of reliability. Several of the judges were of the view that predictive information was indeed indispensable; others were of the view that the Aguilar-Spinelli framework (see Spinelli v United States, 393 US 410 [1969], Aguilar v Texas, 378 US 108 [1964]), applicable to determination of whether an anonymous tip is sufficiently reliable in the probable cause context, should apply to a level three encounter. The judges recognized the continuing vitality of the precept in People v Moore (6 NY3d 496, 499 [2006]) that anonymous tips must be corroborated by sufficient indicia of reliability. Argyris thus does not significantly alter the analysis pertaining in this case.