People v Ravenell (2019 NY Slip Op 06630)





People v Ravenell


2019 NY Slip Op 06630


Decided on September 18, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 18, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
COLLEEN D. DUFFY
VALERIE BRATHWAITE NELSON, JJ.


2019-01713
 (Ind. No. 10006/17)

[*1]The People of the State of New York, appellant,
v
Thomas Ravenell, respondent.


Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Julian Joiris of counsel), for appellant.
Brooklyn Defender Services, Brooklyn, NY (Susannah Karlsson, Sarah Burleson, and Gibson, Dunn & Crutcher LLP [Avi Weitzman, Ashley Fernandez, and Trevor Gopnik], of counsel), for respondent.



DECISION & ORDER
Appeal by the People, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Miriam Cyrulnik, J.), dated November 9, 2018, as, after a hearing, granted those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
ORDERED that the order is affirmed insofar as appealed from.
The evidence at the defendant's pretrial suppression hearing established that, on December 16, 2017, at approximately 2:10 a.m., three plainclothes police officers were on an anti-crime patrol in an unmarked vehicle in a Brooklyn neighborhood. At that time, the officers received a "ShotSpotter" notification, indicating that a gunshot had been detected near the intersection of Newport and Osborn Streets in Brooklyn. The officers responded and found an unidentified witness on the sidewalk approximately one-half to one block away from that intersection. The witness informed the officers that he heard at least one gunshot coming from the corner of Osborn Street and that he observed two males walking up Osborn Street toward Riverdale Avenue. The witness stated that one of the individuals was wearing dark clothing and the other was wearing a white jacket. He did not provide any other description of the men he saw, nor did he state that he saw either man holding or firing a gun. While speaking to the witness, at approximately 2:12 a.m., the officers received a second "ShotSpotter" notification indicating that another gunshot was detected near the intersection of Osborn Street and Riverdale Avenue.
The officers responded to the location where the most recent gunshot was reported and observed the defendant and another man, both of whom wore clothing that matched the description provided by the witness, entering the courtyard of an apartment complex located at the intersection. The officers drove to the other side of the courtyard and approached the two men. One of the officers approached the defendant and asked him to stop. At the time of the inquiry, the defendant's hands were located in his jacket pockets. Upon being asked to stop, the defendant fled and the officer immediately pursued him.
Eventually, the defendant hid behind an SUV, and the officer heard a gunshot and something hitting the ground. The defendant was arrested, and a gun was recovered nearby. Once back at the police station house, the defendant was informed of his rights under Miranda v Arizona (384 US 436), waived them, and denied having fired a gun. The defendant was indicted for one count of criminal possession of a weapon in the second degree and one count of criminal possession of a firearm. In an omnibus motion, the defendant moved, inter alia, to suppress the physical evidence and his statements to the police. Following a suppression hearing, in an order dated November 9, 2018, the Supreme Court, inter alia, granted those branches of the defendant's motion. The People appeal.
" On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance'" (People v Furrs, 149 AD3d 1098, 1099, quoting People v Clermont, 133 AD3d 612, 613). " In order to justify police pursuit, the officers must have reasonable suspicion that a crime has been, is being, or is about to be committed'" (People v Furrs, 149 AD3d at 1099, quoting People v Clermont, 133 AD3d at 613 [internal quotation marks omitted]; see People v Holmes, 81 NY2d 1056, 1058). "Police pursuit of an individual significantly impede[s] the person's freedom of movement and thus must be justified by reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Holmes, 81 NY2d at 1057-1058 [internal quotation marks omitted]; see People v Jones, 164 AD3d 1363, 1365; People v Furrs, 149 AD3d at 1099; People v Clermont, 133 AD3d at 613). A suspect's flight alone, even in conjunction with equivocal circumstances that might justify a common law inquiry, is insufficient to justify pursuit (see People v Moore, 6 NY3d 496, 500; People v Holmes, 81 NY2d at 1058; People v Furrs, 149 AD3d at 1099-1100; People v Clermont, 133 AD3d at 614). However, a defendant's flight plus "other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (People v Sierra, 83 NY2d 928, 929; see People v Parker, 32 NY3d 49, 56; People v Moore, 6 NY3d at 500-501; People v Holmes, 81 NY2d at 1058; People v Furrs, 149 AD3d at 1100; People v Clermont, 133 AD3d at 614).
Here, the police lacked reasonable suspicion that the defendant had committed, was committing, or was about to commit a crime, the necessary predicate for pursuit. Although clothing worn by the defendant and his companion matched the clothing described by the unidentified witness, the witness never saw either of the two men fire or possess a gun. There is no evidence in the record that the police saw any weapons or a bulge or outline of a weapon on the defendant which could indicate that he was involved in a crime (cf. People v Graves, 142 AD3d 559, 560; People v DeJesus, 140 AD3d 788, 788). Furthermore, contrary to the People's contention, the manner in which the defendant held his hands while he ran did not give the police reasonable suspicion to pursue. A stop must be "justified in its inception" (People v De Bour, 40 NY2d 210, 215), and at the time that the police began to chase the defendant, he had both his hands in his jacket pocket, an "innocuous" placement that is "susceptible of an innocent as well as a culpable interpretation" (People v Brannon, 16 NY3d 596, 602; see People v Cantor, 36 NY2d 106, 112-113).
Since the police lacked reasonable suspicion to pursue the defendant, the pursuit was unlawful, and the defendant's disposal of the gun during the pursuit was precipitated by the illegality and was not attenuated from it (see People v Furrs, 149 AD3d at 1100; People v Clermont, 133 AD3d at 614). Accordingly, we agree with the Supreme Court's determination to grant that branch of the defendant's motion which was to suppress the gun. Additionally, the defendant's statements to law enforcement officials were properly suppressed as the direct products of the unlawful pursuit (see People v Wilkerson, 64 NY2d 749, 750; People v Jones, 164 AD3d at 1367; People v Furrs, 149 AD3d at 1100; People v Beckett, 88 AD3d 898, 900).
RIVERA, J.P., AUSTIN, DUFFY and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court