People v Tantao (2019 NY Slip Op 09141)





People v Tantao


2019 NY Slip Op 09141


Decided on December 20, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 20, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


1058 KA 17-01866

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ENRIQUE TANTAO, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (BRITTNEY CLARK OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered May 8, 2017. The judgment convicted defendant upon his plea of guilty of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that County Court erred in refusing to suppress all evidence arising from his allegedly improper gunpoint stop by the police. We conclude that the court properly refused to suppress the evidence inasmuch as the police had reasonable suspicion to forcibly detain defendant at gunpoint, and the subsequent search of a parked vehicle was lawful.
The evidence at the suppression hearing established that, on the date of the incident, police were dispatched to the 200 block of Ash Street based on a 911 call reporting a menacing with a handgun in progress. The suspect was described as a white male; approximately 6 feet 4 inches tall; weighing between 180 and 220 pounds; wearing a red shirt, red hat, and sunglasses; and operating a silver Mazda with a specific license plate number. The responding officer testified that he arrived at the scene less than one minute after being dispatched and observed a silver Mazda with a matching license plate number parked in front of 207 Ash Street, and that the person sitting in the driver's seat of the vehicle, later identified as defendant, matched the description given by the 911 caller. The responding officer parked approximately one car length away from the Mazda, activated his vehicle's emergency lights, and took a position of cover while pointing his M4 rifle at the Mazda. A few seconds later, two more police officers arrived and removed defendant from the driver's seat. The police later learned that the Mazda was registered to another person, who consented to a search of the vehicle. Officers recovered a handgun and a loaded magazine from under the driver's seat of the Mazda. Following his arrest and the issuance of Miranda warnings, defendant made inculpatory statements to the police.
The court refused to suppress the handgun and magazine and the statements made by defendant, finding that the 911 caller was "a citizen who identified herself to police" and further finding that the responding officer had reasonable suspicion to forcibly detain defendant based on his observations of defendant at the scene, which corroborated the description provided by the 911 caller.
On appeal, defendant contends that the court erred in determining that the 911 caller was an identified citizen informant and that the court therefore erred in determining that the responding officer was justified in forcibly detaining defendant at gunpoint. Although we agree with defendant that the police did not learn the identity of the 911 caller until after defendant's arrest and that, therefore, the 911 caller was an anonymous caller at the time defendant was [*2]removed from the Mazda (see People v Bailey, 164 AD3d 815, 818 [2d Dept 2018]; People v Williams, 136 AD3d 1280, 1282 [4th Dept 2016], lv denied 27 NY3d 1141 [2016], lv denied 29 NY3d 954 [2017]; cf. People v Van Every, 1 AD3d 977, 978 [4th Dept 2003], lv denied 1 NY3d 602 [2004]), and that defendant was seized within the meaning of the Fourth Amendment at that time (see People v Moore, 6 NY3d 496, 499 [2006]), we nevertheless conclude that the police had reasonable suspicion justifying the forcible detention of defendant "based on the contents of a 911 call from an anonymous individual and the confirmatory observations of the police" (People v Argyris, 24 NY3d 1138, 1140 [2014], rearg denied 24 NY3d 1211 [2015], cert denied 577 US &mdash, 136
S Ct 793 [2016]; see People v Pruitt, 158 AD3d 1138, 1139 [4th Dept 2018], lv denied 31 NY3d 1120 [2018]; see generally Navarette v California, 572 US 393, 396 [2014]).
Furthermore, even assuming, arguendo, that defendant established that he had standing to challenge the subsequent search of the Mazda, we conclude that the police lawfully searched the vehicle after receiving the owner's voluntary consent (see People v Smith, 54 NY2d 954, 956 [1981]; People v Rivera, 83 AD3d 1370, 1372 [4th Dept 2011], lv denied 17 NY3d 904 [2011]; People v Luciano, 213 AD2d 729, 731 [3d Dept 1995]).
Finally, we note that the uniform sentence and commitment form incorrectly reflects that defendant was sentenced as a second felony offender, and it must therefore be amended to reflect that he was sentenced as a second violent felony offender (see People v Smith, 145 AD3d 1628, 1631 [4th Dept 2016], lv denied 31 NY3d 1017 [2018]).
Entered: December 20, 2019
Mark W. Bennett
Clerk of the Court