People v Bryant
2026 NY Slip Op 03976
June 24, 2026
Appellate Division, Second Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, respondent,
v
Terrell Bryant, appellant.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department
Decided on June 24, 2026
2023-05369, (Ind. No. 70572/21)
Cheryl E. Chambers, J.P.
William G. Ford
Lillian Wan
Susan Quirk, JJ.

Patricia Pazner, New York, NY (Sarah B. Cohen of counsel; Emily Brown on the brief), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Danielle S. Fenn, and Michael Goga of counsel; Liam M. Brozen on the brief), for respondent.

[*1]
DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Dineen Riviezzo, J., at plea; David Kirschner, J., at sentence), rendered May 18, 2023, convicting him of attempted criminal possession of a weapon in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (David Kirschner, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
ORDERED that the judgment is reversed, on the law, those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials are granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
According to testimony elicited at a suppression hearing, on November 12, 2020, at approximately 9:30 p.m., Police Officer Joseph Morgante, Lieutenant Thomas Kaminski, Sergeant Doheny, and Police Officer Justin Steigerwald were engaged in a routine patrol in the vicinity of 109th Avenue and Farmers Boulevard in Queens in an unmarked police vehicle. There was no indication that the officers were patrolling in a high-crime area, and the officers had not received any reports of suspicious activity or about the defendant. The officers observed the defendant walking on the corner of 109th Avenue and Farmers Boulevard, and then turning onto Farmers Boulevard. The officers also made a right-hand turn onto Farmers Boulevard from 109th Avenue. Officer Steigerwald observed the defendant turn into the driveway of 105-31 Farmers Boulevard and walk about halfway up the driveway toward the backyard. Officer Steigerwald observed the defendant "looking around at the street, at the house, at the driveway." Once the officers reached the end of Farmers Boulevard, they made a U-turn and drove back toward 109th Avenue, where they had originally seen the defendant. Approximately one minute after first observing the defendant, Officer Steigerwald observed the defendant coming out of the driveway of 105-33 Farmers Boulevard, which was one residence over from 105-31 Farmers Boulevard. Officer Steigerwald observed the defendant "looking around and walking tight to the fence . . . that ran alongside of the driveway, like almost scaling the fence." The officers made another U-turn, drove around the block by making three right turns, and headed back toward 109th Avenue, where they observed the defendant crossing [*2]the lawn of a residence located at 190-16 109th Avenue. Officer Steigerwald testified that he believed that the defendant "appeared . . . to be casing the driveways." Officer Steigerwald also testified that, in his experience, individuals engaged in theft crimes often carried tools and/or weapons. However, none of the officers observed the defendant to be carrying any tools or weapons.
The officers then exited the vehicle to speak to the defendant; however, the defendant immediately took flight. The officers immediately pursued the defendant further down the driveway of 190-16 109th Avenue, toward a fence that separated the driveway from the backyard, and observed the defendant jump over the fence into the backyard. The officers followed the defendant into the backyard of 190-16 109th Avenue and placed the defendant in custody.
During the pursuit, Officer Steigerwald "heard . . . a loud metal object smack on the cement." While the defendant was being placed into custody, Sergeant Doheny informed the other officers that the "noise was a gun that fell on the ground." Officer Steigerwald later recovered the gun in the backyard area behind the fence where the defendant had jumped over, approximately 10 to 15 feet from where the defendant was apprehended. After being placed in custody, the defendant made several incriminating statements.
In a decision and order dated May 16, 2022, the Supreme Court, inter alia, denied those branches of the defendant's omnibus motion which were to suppress the gun and his statements to law enforcement officials.
"On a motion to suppress physical evidence, the People bear the burden of going forward to establish the legality of police conduct in the first instance" (People v Sidbury, 237 AD3d 975, 976 [internal quotation marks omitted]; see People v Joyette, 219 AD3d 628, 630). "However, it is the defendant who bears the ultimate burden of proving that the evidence should not be used against him [or her]" (People v Rhames, 196 AD3d 510, 512 [internal quotation marks omitted]).
"The Court must consider whether or not the action of the police was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible" (People v Mortel, 197 AD3d 196, 203). This requires weighing the interference of the police conduct against the precipitating and attendant factors (see People v De Bour, 40 NY2d 210, 223; People v Johnson, 209 AD2d 434, 435). "In People v De Bour (40 NY2d 210), the Court of Appeals established a graduated four-level test for evaluating the propriety of police encounters with civilians" (People v Hernandez, 223 AD3d 751, 753; see People v Moore, 6 NY3d 496, 498-499). The first level permits a police officer to request information from an individual, and merely requires that the request be supported by an objective credible reason, not necessarily indicative of criminality (see People v Moore, 6 NY3d at 498; People v De Bour, 40 NY2d at 223).
The second level, known as the "common-law right of inquiry," "permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot" (People v Moore, 6 NY3d at 498). "Based upon a founded suspicion that criminal activity is afoot, the subject may be asked to produce identification, may be asked whether he [or she] has weapons, and may be asked to remove his [or her] hands from his [or her] pockets" (People v Palm, 238 AD3d 787, 788 [internal quotation marks omitted]).
The third level permits a seizure, meaning that a police officer may forcibly stop and detain an individual, based upon a "reasonable suspicion" that an individual is committing, has committed, or is about to commit a crime (People v De Bour, 40 NY2d at 223; see People v Moore, 6 NY3d at 498-499). Finally, the fourth level authorizes an arrest based on probable cause to believe that a person has committed a crime (see People v Moore, 6 NY3d at 499; People v De Bour, 40 NY2d at 223).
"In order to justify police pursuit, the officers must have reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Sidbury, 237 AD3d at 976 [internal quotation marks omitted]; see People v Leon, 222 AD3d 998, 999). "Reasonable suspicion [*3]exists where there is a quantum of knowledge sufficient to induce an ordinarily prudent and cautious man [or woman] under the circumstances to believe criminal activity is at hand" (People v Sidbury, 237 AD3d at 976 [internal quotation marks omitted]). "A suspect's flight alone or in conjunction with equivocal circumstances that might suggest a police request for information is insufficient to justify pursuit" (id. [internal quotation marks omitted]). In other words, where "there is nothing to establish that a crime has been or is being committed, flight, like refusal to answer, is an insufficient basis for seizure or for the limited detention that is involved in pursuit" (People v Howard, 50 NY2d 583, 592). "However, a defendant's flight plus other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (People v Sidbury, 237 AD3d at 976 [internal quotation marks omitted]).
Here, under the circumstances presented, the encounter began as a level two intrusion, with the officers parking and exiting their vehicle, stating "police," and asking the defendant to stop (see People v Jones, 164 AD3d 1363, 1366). The officers' pursuit of the defendant constituted a level three intrusion, requiring a reasonable suspicion that the defendant was involved in a felony or misdemeanor (see id.; People v Clermont, 133 AD3d 612, 614). Here, however, the circumstances, which included the defendant's actions of walking up and down the driveways of 105-31 and 105-33 Farmers Boulevard and across a lawn and toward the rear of a residence on 109th Avenue, "although not inconsistent with culpable [conduct,] are also susceptible of many innocent interpretations" (People v Rosario, 202 AD2d 699, 700 [internal quotation marks omitted]; see People v Johnson, 64 NY2d 617, 617; People v Howard, 50 NY2d at 589-590; People v Clermont, 133 AD3d at 614), and were, "[a]t most . . . equivocal and suspicious" (People v Corrado, 22 NY2d 308, 311; see People v Brown, 32 NY2d 172, 174). Importantly, the officers did not observe the defendant looking into any houses or backyards, and did not observe him carrying or attempting to conceal any tools or weapons. Therefore, the defendant's actions preceding his interaction with the officers and his flight therefrom did not support a reasonable suspicion of particularized criminal action (see People v Johnson, 64 NY2d at 617; People v Howard, 50 NY2d at 589-593; People v Jones, 164 AD3d at 1365-1367; People v Clermont, 133 AD3d at 614).
Since the police lacked reasonable suspicion to pursue the defendant, the pursuit was unlawful, and the defendant's disposal of the gun during the pursuit was precipitated by the illegality and was not attenuated from it (see People v Ravenell, 175 AD3d 1437, 1439; People v Furrs, 149 AD3d 1098, 1100). Accordingly, the Supreme Court should have granted that branch of the defendant's omnibus motion which was to suppress the gun. Additionally, the defendant's statements to law enforcement officials should have been suppressed as the direct products of the unlawful pursuit (see People v Ravenell, 175 AD3d at 1440; People v Furrs, 149 AD3d at 1100).
CHAMBERS, J.P., FORD, WAN and QUIRK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court